**LEVI & KORSINSKY, LLP**
David C. Jaynes (SBN 338917)
445 South Figueroa Street, 31st Floor
Los Angeles, CA  90071
Tel: (213) 985-7290
Email: djaynes@zlk.com

*Lead Counsel for Lead Plaintiff*
*Dr. Kevin Douglas and the Class*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. KEVIN DOUGLAS, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> vs.<br><br>PLDT INC., MANUEL V. PANGILINAN, ALFRED S. PANLILIO, ANNABELLE L. CHUA, MARILYN A. VICTORIO-AQUINO, MA. LOURDES C. RAUSA-CHAN, GIL SAMSON D. GARCIA, JUNE CHERYL A. CABAL-REVILLA, AND JANE BASAS,<br><br>      Defendants.<br>) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 2:23-cv-00885-FLA (MAAx)<br><br>CLASS ACTION<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF THE PLAN OF ALLOCATION AND FINAL CERTIFICATION OF THE CLASS<br><br>Date: August 9, 2024<br>Time: 1:30 p.m.<br>Judge: Hon. Fernando L. Aenlle-Rocha<br>Courtroom: 6B |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.........................................................................................ii

TABLE OF AUTHORITIES...............................................................................iv

I.    PRELIMINARY STATEMENT .....................................................................1

II.    FACTS AND PROCEDURAL HISTORY ......................................................2

III.    ARGUMENT ................................................................................................4

  A.    The Proposed Settlement is Fair, Reasonable and Adequate and Should Be Finally Approved by the Court...................................................................4

    1.    The Strength of Lead Plaintiff's Case (Rodriguez Factor 1) .........................5

    2.    The Expense, Complexity, Likely Duration, and Risks of Further Litigation (Rodriguez Factor 2 and Rule 23(e)(2)(C)(i))...................................6

      a.    Expense, Complexity, and Likely Duration of Further Litigation............6

      b.    Risks Related to Establishing Liability.......................................7

      c.    Risks Relating to Establishing Loss Causation and Damages..................8

    3.    The Risk of Maintaining Class Action Status Throughout the Litigation (Rodriguez Factor 3) .....................................................9

    4.    The Amount Offered in Settlement (Rodriguez Factor 4)...........................10

    5.    The Extent of Discovery Completed and Stage of the Proceedings (Rodriguez Factor 5) ......................................................11

    6.    The Experience and Views of Class Counsel, Arm's-Length Settlement Negotiations and Adequate Representation Favor Approval of the Settlement (Rodriguez Factor 6, Rule 23(e)(2)(A) and Rule 23(e)(2)(B)).....................12

    7.    No Government Entity Participated in this Action (Rodriguez Factor 7) ....13

    8.    The Reaction of the Class (Rodriguez Factor 8)............................14

    9.    Terms of Proposed Attorneys' Fees and Additional Agreements (Rule 23(e)(2)(C)(iii) and Rule 23(e)(2)(C)(iv)) ...................................16

    10.    The Proposed Method for Distributing Relief is Effective (Rule 23(e)(2)(C)(ii)) ..........................................................17

B.      The Plan of Allocation Should Be Approved Because it Treats Class Members Equitably (Rule 23(e)(2)(D)) ...........................................................17

C.      The Court Should Finally Certify the Class...................................................19

IV.      CONCLUSION ........................................................................................................19

# **TABLE OF AUTHORITIES**

**Cases**

*Ayala v. AT&T Mobility Servs., LLC,*
  2024 U.S. Dist. LEXIS 48470 (C.D. Cal. Mar. 18, 2024)..........................................5

*Beirne v. Trepco Imps. & Distribution,*
  2020 WL 8669828 (C.D. Cal. Nov. 16, 2020)...........................................................4

*Brooks v. Life Care Ctrs., Inc.,*
  2015 WL 13298569 (C.D. Cal. Oct. 19, 2015)..........................................................9

*Cheng Jiangchen v. Rentech, Inc.,*
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)..........................................................12

*Defrees v. Kirkland,*
  2018 WL 11365544 (C.D. Cal. July 26, 2018)..........................................................9

*DeStefano v. Zynga, Inc.,*
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................10, 15, 18

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),*
  213 F.3d 454 (9th Cir. 2000)..................................................................................11

*Ellis v. Naval Air Rework Facility,*
  87 F.R.D. 15 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981).......................5

*Hefler v. Pekoc,*
  802 F. App'x 285 (9th Cir. 2020) ............................................................................6

*Hefler v. Wells Fargo & Co.,*
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)..........................................................6

*In re Amgen Inc. Sec. Litig.,*
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016).....................................................8, 16

*In re Celera Corp. Sec. Litig.,*
  2015 WL 1482303 (N.D. Cal. Mar. 31, 2015)..........................................................8

*In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.,*
  1992 WL 226321 (C.D. Cal. Jun. 10, 1992).............................................................12

*In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.,*
  33 F.3d 29 (9th Cir. 1994).......................................................................................14

*In re Goldman Sachs Grp., Inc. Sec. Litig.,*
  2021 WL 5826285 (S.D.N.Y. Dec. 8, 2021) ..........................................................10

*In re Heritage Bond Litig.,*
  2005 WL 1594403 (C.D. Cal June 10, 2005) ..........................................................6

*In re Immune Response Sec. Litig.,*
  497 F. Supp. 2d 1166 (S.D. Cal. 2007)...................................................................8

*In re MGM Mirage Sec. Litig.,*
  708 F. App'x 894 (9th Cir. 2017)...........................................................................15

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................4, 13, 17, 18

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010).......................................................................................7

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995)...................................................................................4, 12

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
  460 F.3d 1217 (9th Cir. 2006)......................................................................................4

*In re Snap Sec. Litig.*,
  2021 WL 667590 (C.D. Cal. Feb. 18, 2021)..............................................................14

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018).......................................................................................8

*Kmiec v. Powerwave Techs., Inc.*,
  2016 WL 5938709 (C.D. Cal. July 11, 2016)............................................................10

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998)....................................................................................11

*Nat'l Rural Telecomms. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................12, 13, 15

*Nwabueze v. AT & T Inc.*,
  2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) ..........................................................14

*Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982)...................................................................................5, 11

*Perez v. DirecTV Grp. Holdings, LLC*,
  2023 WL 1931376 (C.D. Cal. Jan. 23, 2023) ...........................................................19

*Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*,
  732 F. App'x 543 (9th Cir. 2018) ...............................................................................7

*Redwen v. Sino Clean Energy, Inc*,
  2013 WL 12303367 (C.D. Cal. July 9, 2013)...............................................6, 15, 18

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009).................................................................................5, 12

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003).....................................................................................16

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976)........................................................................................4

**Other Authorities**

Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation*: 2023 Full-Year Review (NERA Jan. 23, 2024)....................................10

L.T. Bulan, L.E. Simmons, *Securities Class Action Settlements, 2023 Review and*

*Analysis,* Cornerstone Research (2024) .......................................................................11

**Rules**

FED. R. CIV. P. 1 ..................................................................................................................4

FED. R. CIV. P. 23(A) ........................................................................................................19

FED. R. CIV. P. 23(b)(3) .....................................................................................................19

FED. R. CIV. P. 23(c)(1)(C) ................................................................................................9

FED. R. CIV. P. 23(e)(2) ............................................................................................4, 16, 17

FED. R. CIV. P. 23(f) .............................................................................................................9

## I.      PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 23(e), Court-appointed lead plaintiff Dr. Kevin Douglas ("Lead Plaintiff"), on behalf of himself and the Class, respectfully submits this Memorandum of Points and Authorities in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement, Approval of the Plan of Allocation, and Final Certification of the Class ("Motion for Final Approval"). The Motion for Final Approval and this Memorandum of Points and Authorities are supported by the Declaration of Shannon L. Hopkins in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement, Approval of the Plan of Allocation, and Final Certification of the Class; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses and an Award to Lead Plaintiff ("Hopkins Declaration" or "Hopkins Decl."), filed herewith.[1] The terms of the Settlement are set forth in the Stipulation of Settlement (the "Stipulation" or the "Settlement"), filed with the Court on February 16, 2024. *See* ECF 54-7.[2] The Class consists of all persons and entities that purchased or otherwise acquired publicly traded PLDT, Inc. ("PLDT" or the "Company") American Depository Shares ("ADS") between from January 1, 2019 through December 21, 2022, inclusive (the "Class Period"), and were injured thereby (the "Class"). [3]

As the Honorable Cormac J. Carney recognized in the Order Granting Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), the Settlement represents "an exceptional result" for the Class, particularly in light of the considerable expense, complexity, and risks posed by continued litigation, including obtaining international discovery, class certification, successfully opposing summary judgment, prevailing at trial, and litigating inevitable post-trial motions and appeals. ECF 56 at 18. As discussed below and in the Hopkins

---

[1] "Ex." refers to exhibits attached to the Hopkins Declaration.

[2] Unless otherwise noted, all internal quotation marks and citations are omitted, all emphasis is added, and all capitalized terms not defined herein shall have the same meaning ascribed to them in the Stipulation.

[3] Proposed Orders will be submitted with Lead Plaintiff's reply papers.

Declaration, Lead Counsel conducted a thorough investigation and drafted a detailed 204-page Amended Complaint (the "Complaint"), fully briefed (but did not file) an opposition to Defendants' motion to dismiss and exchanged thoroughly researched mediation statements with Defendants. Therefore, Lead Plaintiff and Lead Counsel were well informed about the strengths and weaknesses of their case when they agreed to settle this action for $3 million. Indeed, the significant risks involved in taking this Litigation further and through trial, when measured against the immediate benefit of the Settlement, justify approval. The $3 million Settlement is substantial, representing an approximate 15.4% recovery of estimated maximum recoverable damages of $19.5 million, which the Honorable Cormac J. Carney has already preliminarily found is reasonable given that "courts routinely conclude that securities class action settlements with a far lower percentage recovery are fair and adequate." Preliminary Approval Order at 18.

The Settlement and Plan of Allocation are also fully supported by the Lead Plaintiff and have received considerable support from the Class, with only one unsubstantiated objection to the Plan of Allocation received thus far.

In light of their informed assessment of the strengths and weaknesses of the claims and defenses asserted, the considerable risks and delay associated with continued litigation and trial, and the "exceptional" Settlement Amount, Lead Plaintiff and Lead Counsel believe that the Settlement and Plan of Allocation are eminently fair, reasonable, and adequate, and respectfully request the Court finally approve them.

## II.  FACTS AND PROCEDURAL HISTORY

Lead Plaintiff has prosecuted this class action individually and on behalf of the Class alleging violations of the federal securities laws against certain former officers and directors[4] under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder. Hopkins Decl. ¶¶19-20.

---

[4] Defendants are PLDT Inc., Manuel V. Pangilinan, Alfred S. Panlilio, Annabelle L. Chua, Marilyn A. Victorio-Aquino, Ma. Lourdes C. Rausa-Chan, Gil Samson D. Garcia, June Cheryl A. Cabal-Revilla, and Jane Basas ("Defendants" and, collectively with Lead Plaintiff, the "Parties").

2

The history of the litigation is described in further detail in the Hopkins Declaration and is summarized herein. The Complaint alleges that the Class suffered damages because Defendants made materially false and misleading statements concerning, *inter alia*, PLDT's capital expenditures, internal controls, and 5G rollout. *Id*. ¶23.

The Action commenced with the initial complaint filed on February 6, 2023. ECF 1. On April 26, 2023, the Honorable Cormac J. Carney appointed Dr. Douglas as Lead Plaintiff and approved Lead Plaintiff's choice of Levi & Korsinsky as Lead Counsel. ECF 24. On July 7, 2023, after an exhaustive investigation by Lead Counsel, Lead Plaintiff filed the Complaint. ECF 33. On October 10, 2023, Defendants PLDT, Pangilinan, Panlilio, and Victorio-Aquino moved to dismiss the Complaint. ECFs 46-48 (the "Motion to Dismiss"). In response, Lead Counsel prepared a memorandum in opposition, which was near final by the time that the Settlement was reached. Hopkins Decl. ¶¶29-30. Simultaneously, the Parties explored mediation. On November 17, 2023, the Parties engaged in a private mediation (the "Mediation") with Jed D. Melnick of JAMS. *Id*. ¶31. During the Mediation, counsel for the Parties engaged in rigorous discussions with the Mediator concerning a wide range of issues implicating liability, causation, damages, and collectability before reaching the Settlement later that day. *Id*. Thereafter, the Parties negotiated and signed a Term Sheet on November 30, 2023. *Id*.

On December 1, 2023, the Parties filed the Joint Stipulation and [Proposed] Order Vacating Briefing Schedule Due to Preliminary Settlement Agreement. ECF 50. Lead Plaintiff negotiated the Stipulation and its exhibits with the Defendants, and prepared the class notice, postcard notice, summary notice, claim form, and proposed orders for preliminary approval and final approval and entering final judgment. Hopkins Decl. ¶32. On March 6, 2024, the Honorable Cormac J. Carney granted Lead Plaintiff's Motion for Preliminary Approval of Settlement and entered the Preliminary Approval Order. ECF 56.

## III.    ARGUMENT

### A.    The Proposed Settlement is Fair, Reasonable and Adequate and Should Be Finally Approved by the Court

The law favors the settlement of disputed claims among private litigants, particularly in class actions. *Beirne v. Trepco Imps. & Distribution*, 2020 WL 8669828, at \*2 (C.D. Cal. Nov. 16, 2020). The Ninth Circuit has recognized that "[w]hen reviewing complex class action settlements, we have a 'strong judicial policy that favors settlements.'" *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits."). Additionally, "the public has an overriding interest in securing 'the just, speedy, and inexpensive determination of every action." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006); FED. R. CIV. P. 1. This also holds true in class action lawsuits. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("there is an overriding public interest in settling and quieting litigation…" which is "particularly true in class action suits…").

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims. A class action settlement should be approved if the court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).

To determine whether a settlement is "fair, reasonable, and adequate" under Rule 23(e)(2), a court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; (iv) and any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

The Ninth Circuit provides additional, somewhat overlapping factors, which courts consider in evaluating whether a settlement meets this standard, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Ayala v. AT&T Mobility Servs., LLC*, 2024 U.S. Dist. LEXIS 48470, at *9 (C.D. Cal. Mar. 18, 2024) (Aenlle-Rocha, J.) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (the "*Rodriguez* factors.")

"The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Approval of a class action settlement "is left to the sound discretion of the trial judge," and approval "will be reversed only for abuse of that discretion." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981). The Settlement warrants Court approval under the above standards.

**1. The Strength of Lead Plaintiff's Case (*Rodriguez* Factor 1)**

The strength of Lead Plaintiff's case, when balanced against the risks and obstacles inherent in continued litigation, weighs in favor of granting final approval of the Settlement. Lead Plaintiff firmly believes he has a strong case. For instance, Defendants admitted that at the end of the Class Period, the PHP 48 billion budget overrun was comprised of "undocumented" purchases orders that were not recorded in PLDT's accounting records, requiring PLDT to have to "reconstruct the books" to reconcile its inventory and vendor payments. Hopkins Decl. ¶17. In assessing the proposed Settlement, Lead Plaintiff considered the substantial risks to obtaining a larger recovery. This Action still had to proceed through discovery, class certification,

5

summary judgment and trial. Had Lead Plaintiff's claims proceeded, there were also serious obstacles to recovery with respect to liability and damages. In light of these barriers, the proposed settlement for $3 million is fair and reasonable.

**2. The Expense, Complexity, Likely Duration, and Risks of Further Litigation (*Rodriguez* Factor 2 and Rule 23(e)(2)(C)(i))**

**a. Expense, Complexity, and Likely Duration of Further Litigation**

The expense, complexity and likely duration of further litigation are factors that strongly support approval of the Settlement. *In re Heritage Bond Litig.*, 2005 WL 1594403, at \*8 (C.D. Cal June 10, 2005) ("much of the value of a settlement lies in the ability to make funds available promptly"). "Courts have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). This case was no different.

The legal issues presented are complex—proving scienter, causation, and damages—and would involve expert testimony. The case was still far from trial, and would likely have continued for an extended period in the absence of a settlement. In discovery, Lead Plaintiff would have needed to expend hundreds, if not thousands, of hours to complete review and analysis of document productions.

Lead Counsel would have had to devote extensive time and resources to prepare international discovery requests and travel to the Philippines where all relevant witnesses and documents reside. *See Redwen v. Sino Clean Energy, Inc*, 2013 WL 12303367, at \*6 (C.D. Cal. July 9, 2013) (acknowledging that "[l]ead [p]laintiff faced extraordinary discovery costs because all of the Defendants are" located internationally). The case would have also involved considerable work with accounting and damages experts to prepare for trial. Indeed, the importance of expert testimony on

the financial issues increased the difficulty of explaining and establishing securities fraud to a jury.

While Lead Plaintiff and Lead Counsel believe that the claims have significant merit, they were well aware that many other similar actions lose on dispositive motions, at trial, or on appeal. *See, e.g.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543, 547 (9th Cir. 2018) (affirming summary judgment in favor of defendants where plaintiffs failed to establish loss causation); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (same). These practical realities weigh in favor of approving the proposed Settlement.

### b. Risks Related to Establishing Liability

Proving Defendants' liability in this case was not guaranteed. Indeed, Defendants' arguments in motion practice and settlement negotiations made it clear that the parties held divergent views regarding the factual and legal issues presented, the evidence, and the strengths and weakness of the Parties' respective claims and defenses. Defendants advanced several credible arguments that their Class Period misstatements were not actionable. For example, Defendants argued that, despite the admitted budget overrun, PLDT's historically reported capital expenditure figures were accurate as evidenced by the fact PLDT never restated those figures. *See* ECF 47 at 13-16, 20-23. Defendants further argued that their capital expenditure statements were forward-looking and protected by the PSLRA's safe harbor as they discussed "continuing" budget overruns and inactionable opinions for which Lead Plaintiff failed to allege were not reasonably held. Defendants further argued that their 5G statements were literally true because, while Defendant Victorio-Aquino purportedly "misspoke" during the Special Call when she stated PLDT "stopped" the 5G rollout during the Class Period, investors were not misinformed because in the same Special Call, Defendant Panlilio corrected her stating the rollout merely "slowed down." This was an issue of fact and Lead Plaintiff would have to convince a jury to accept his version of the facts. Even if Lead Plaintiff established falsity, Lead Plaintiff would still have had to prove

materiality, which is ordinarily determined by the jury. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1013 (9th Cir. 2018) ("Ultimately, a jury should assess materiality as a question of fact.").

Further, Lead Plaintiff would have to prove scienter—that Defendants, at minimum, recklessly issued the alleged false or misleading statements. Scienter is a notoriously difficult element to prove, as the evidence is often largely circumstantial, and may be undercut by testimony from individual defendants that they did not possess the requisite state of mind. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("scienter … [is] complex and difficult to establish at trial"). Defendants advanced credible arguments that they had no personal pecuniary motive to make false statements, such as to profit from insider selling, and that Lead Plaintiff failed to adequately allege the reports they had access to contained any information contradicting their public statements. There was no guarantee that all claims would proceed to trial and that a jury would find in Lead Plaintiff's favor.

### c. Risks Relating to Establishing Loss Causation and Damages

Lead Plaintiff also faced substantial risk in proving loss causation and damages. *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) (in "any securities litigation case, it [is] difficult for [plaintiff] to prove loss causation and damages at trial."); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016) ("complex questions… [including] loss causation would have required the parties to present competing scientific and damages expert witnesses at trial.").

Loss causation and damages analyses typically require complex economic and statistical assessments by experts at summary judgment, in pre-trial motions, and at trial, providing multiple opportunities for the Defendants to establish that the decline in PLDT's ADS price was caused by factors unrelated to the alleged fraud and no damages had occurred. For example, Defendants in this case argued in their motion to dismiss, that the ADS price drop on December 19, 2022 was caused by new "firm-specific facts"

about PLDT's future financial condition—i.e., the impact of the capital expenditure budget overrun on PLDT's financial results in the future, and not a revelation that prior statements were untrue when made. Hopkins Decl. ¶28. Moreover, Defendants were likely to argue that the other categories of statements Plaintiff challenged,  the 5G rollout and internal control statements, were not  "corrected" by any subsequent disclosures resulting in an ADS price decline. ECF 47 at 44-46. While Lead Counsel believes that reliable and convincing expert testimony can be provided on the damages question, in the end, even on the best facts, loss causation and damages issues often become a "hotly contested trial with a battle of the experts that could be difficult for a jury to understand." *Defrees v. Kirkland*, 2018 WL 11365544, at *5 (C.D. Cal. July 26, 2018).

### 3. The Risk of Maintaining Class Action Status Throughout the Litigation (Rodriguez Factor 3)

The case had not yet reached the class certification stage and Defendants would undoubtedly have challenged it, arguing the alleged false statements did not impact PLDT's ADS price and the market was not efficient. If the Court found Defendants' arguments persuasive, it could deny certification, which would prevent recovery for absent Class members. Moreover, even if class certification was granted, class certification orders are reviewable and can be modified at any time by the Court before final judgment. *See* FED. R. CIV. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment"). The Class could also become decertified, as FED. R. CIV. P. 23(c) allows a court to decertify a class at any time. *See, e.g., Brooks v. Life Care Ctrs., Inc.*, 2015 WL 13298569, at *3 (C.D. Cal. Oct. 19, 2015) (considering likelihood of decertification and appeal when granting final settlement approval). Or, Defendants could petition the Ninth Circuit for leave to appeal that decision immediately pursuant to Rule 23(f), which could result in substantial delays in the resolution of the litigation. *See In re Goldman Sachs Grp., Inc. Sec. Litig.*,

2021 WL 5826285 (S.D.N.Y. Dec. 8, 2021). Therefore, this factor supports approval of the Settlement.

### 4. The Amount Offered in Settlement (*Rodriguez* Factor 4)

The amount of the Settlement, $3 million, is quite substantial when compared with the maximum recoverable damages of approximately $19.5 million estimated by Lead Plaintiff's expert. ECF 54-1 at 7. The Settlement reflects an approximately 15.4% recovery on that $19.5 million. ECF 54-2 at ¶13. The Honorable Cormac J. Carney found this to be "an exceptional result" in the Preliminary Approval Order. ECF 56 at 18. Moreover, the recovery is above what has been approved in other similar cases. *See Kmiec v. Powerwave Techs., Inc.*, 2016 WL 5938709, at *3 (C.D. Cal. July 11, 2016) (approving 13 percent of the maximum damages that plaintiffs could reasonably expect to recover at trial); *DeStefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (granting final approval where settlement represented roughly 14 percent of maximum recoverable damages).

However, a full damages recovery was unlikely given that the Action had not progressed beyond motion to dismiss briefing. It is doubtful that Lead Plaintiff would have obtained a better result for the Class if litigation continued given the significant risks and uncertainties (§III.A.2.b-c., *supra*). If Lead Plaintiff and Defendants proceeded with discovery, class certification, expert discovery, summary judgment briefing, trial, and appeals, Defendants would have likely exhausted significant amounts (if not all) of the applicable insurance coverage. Moreover, the cost of trial could be as much or more than the maximum damages.

In sum, the uncertainties of continued litigation posed a considerable risk that the Class would receive smaller recovery or no recovery at all. The Settlement of $3 million, thus, is fair and reasonable as it represents an excellent recovery that exceeds the median settlement amount in similar cases. *See* Ex. 5, Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation*: 2023 Full-Year Review at 26, Figure 22 (NERA Jan. 23, 2024) (median ratio of settlement to investor losses was

1.8% in 2023); Ex. 6, L.T. Bulan, L.E. Simmons, *Securities Class Action Settlements, 2023 Review and Analysis,* Cornerstone Research (2024) at 6, Figure 5 (stating that the median comparable securities class action settlements in Rule 10b-5 cases in 2023 resulted in a recovery of 15.2% of estimated damages).

### 5.  The Extent of Discovery Completed and Stage of the Proceedings (*Rodriguez* Factor 5)

In reviewing a class action settlement, the Court may also consider the stage of the proceedings and the discovery completed. *See Officers for Justice*, 688 F.2d at 625; *Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig*.), 213 F.3d 454, 458 (9th Cir. 2000). The Parties agreed to the Settlement prior to the completion of full briefing on Defendants' Motion to Dismiss. Discovery had not commenced. However, "in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Mego Fin.*, 213 F.3d at 459 (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Here, Lead Plaintiff and Lead Counsel were adequately informed of the strengths and weaknesses of the case thorough their extensive investigation during which they hired investigators who located confidential witnesses in the Philippines, combed the public record both in the U.S. and the Philippines and consulted with damages, causation and market efficiency experts. Hopkins Decl. ¶22. Lead Counsel also fully briefed, but did not file due to the Settlement, their opposition to Defendants' motion to dismiss. ECF 46.

Lead Counsel then engaged in robust research, negotiation, and mediation efforts to achieve the Settlement, including researching and drafting an extensive mediation statement that addressed liability, damages, collectability, and other pertinent legal and factual considerations. Lead Counsel further engaged and consulted with experts on complex issues relating to damages, market efficiency and loss causation. Hopkins Decl. ¶39. As a result, Lead Plaintiff and Lead Counsel were able to assess the strengths and weaknesses of the claims asserted and resolve the litigation favorably for the Class.

**6. The Experience and Views of Class Counsel, Arm's-Length Settlement Negotiations and Adequate Representation Favor Approval of the Settlement (*Rodriguez* Factor 6, Rule 23(e)(2)(A) and Rule 23(e)(2)(B))**

The judgment of Lead Counsel that the Settlement is in the best interests of the Class is entitled to "great weight." *Nat'l Rural Telecomms. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see also In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 WL 226321, at *2 (C.D. Cal. Jun. 10, 1992) (finding counsel's belief that proposed settlement represented most beneficial result for class compelling factor in its approval); *Rodriguez*, 563 F.3d at 967 ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.") (quoting *Pac. Enters.,* 47 F.3d at 378). The Ninth Circuit has long deferred to the private consensual decision of the parties and their counsel in settling an action. *Rodriguez*, 563 F.3d at 965.

Lead Plaintiff and Lead Counsel have adequately represented the Class and do not have any interests antagonistic to those of other Class Members. Indeed, Lead Plaintiff's claims "arise from the same alleged conduct: the purchase of [PLDT ADSs] at inflated prices based on Defendants' alleged … misstatements." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019). Additionally, Lead Plaintiff actively supervised this litigation and endorses the Settlement. *See* Ex. 1, Declaration of Lead Plaintiff Dr. Kevin Douglas in Support of: (a) Motion For Final Approval of Class Action Settlement, Approval of the Plan of Allocation, and Final Certification of the Class and (b) Lead Counsel's Motion for an Award of Attorney's Fees and Litigation Expenses, and for an Award to Lead Plaintiff ("Douglas Decl."), ¶¶2-9.

Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements. *See* Ex. 2, Levi & Korsinsky Firm Resume. Lead Counsel conducted an extensive

investigation and analysis of the allegations in preparing the Complaint and devoted significant time prosecuting this litigation and achieving the Settlement. *See* Hopkins Decl. ¶22. The Settlement was achieved only after a rigorous mediation session, before experienced mediator, Jed D. Melnick of JAMS. The arm's length negotiations between the Parties that occurred during the mediation were informed by the knowledge Lead Counsel gained from their investigation and analysis of the facts and legal issues, including consultation with Lead Plaintiff's damage consultant. The Parties were able to negotiate a fair Settlement accounting for the costs and risks of continued litigation. The negotiations were, at all times, hard-fought and produced a result that the Parties believed to be in their respective interests. *Id*. ¶32.

Having carefully considered and evaluated the relevant legal authorities and evidence to support the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense, and duration of continued litigation, and the likely appeals and subsequent proceedings if Lead Plaintiff were to prevail against Defendants at trial, Lead Counsel has concluded that the Settlement is fair, reasonable, and adequate, and in the best interests of the Class. *Id*. ¶42. "There is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043.

### 7.  No Government Entity Participated in this Action (*Rodriguez* Factor 7)

Ninth Circuit Courts also consider whether a governmental participant impacted the litigation. No such actor is present in this litigation. In such situations, courts have found that this consideration is inapplicable. *DIRECTV, Inc*., 221 F.R.D. at 528 ("There is no governmental participant in this Class Action. As a result, this factor does not apply to the Court's analysis.") Lead Counsel is aware of no state or federal official that has raised an objection or concern regarding the Settlement. Hopkins Decl. ¶75. Thus, even if considered, this factor weighs in favor of Settlement approval.

13

### 8.  The Reaction of the Class (*Rodriguez* Factor 8)

Pursuant to the Preliminary Approval Order, the Court-approved Notice was mailed to potential Class Members who could be identified with reasonable effort, and a Summary Notice was published on *Globe Newswire* on April 10, 2024. *See* Ex. 4, the Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl."), ¶10. Strategic Claims also posted these documents on the Settlement-specific website. *Id.*, ¶12. The Notice advised the Class of the terms of the Settlement and the Plan of Allocation as well as the procedure and deadline for filing objections. In total, 43,258 potential Class Members were notified of the Settlement by Postcard Notice or email containing a direct link to the Notice and Claim Form on the Settlement website. *Id.*, ¶8.

While the objection and exclusion deadline, July 15, 2024, has not yet passed, there has been only one objection and two requests for exclusion. *Id.*, ¶¶13, 14. The only *pro se* objection, received from Matthew Miner ("Miner" or the "Objector"), should be overruled for procedural and substantive reasons. ECF 58. *First*, the Objection lacks standing because the Objector has not provided any proof that he is a Class member. *In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29, 30 (9th Cir. 1994) ("[o]ne must be an aggrieved class member" to have standing to object to a settlement); *In re Snap Sec. Litig.*, 2021 WL 667590, at *2 (C.D. Cal. Feb. 18, 2021) (finding that an objector did not have standing to object to the settlement because he did not provide "any documentation to establish his membership in the class").

*Second,* while styled as an "Objection to Proposed *Settlement*," the Objector appears to only take issue with the Plan of Allocation—he does not argue that the Settlement amount is insufficient. *Nwabueze v. AT & T Inc.*, 2013 WL 6199596, at *7 (N.D. Cal. Nov. 27, 2013) (overruling objections "because they do not raise concerns regarding the fairness, adequacy, or reasonableness of the Settlement."). Rather, the Objector complains that "[u]nder the terms of the Proposed Settlement, it is estimated

14

that the Objector would 'get' approximately $7.54, however such amount would not actually be paid as it is under $10." ECF 58, ¶5. But courts routinely approve plans of allocation identical to this one that limit the distribution to recoverable losses that exceed $10.00 because it is not economical to process small claims as the cost typically exceeds the amount of the claim. *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017) ("numerous cases that have approved similar or higher minimum thresholds" than the $10 *de minimis* provision); *Redwen*, 2013 WL 12303367, at *8 (approving $20 de minimis threshold which are "commonly used in distributions from private securities litigation" settlements to eliminate "disproportionate administrative expenses"); *Destefano,* 2016 WL 537946, at *15 ($10 threshold). That counsel has only received one objection overwhelmingly supports approval of the settlement. *DIRECTV*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

Lead Counsel also received two requests for exclusion. Bravata Decl. Ex. E. One request, submitted by Juliias Ellis, is improper. Mr. Ellis does not appear to be a Class member as he sold all his PLDT ADSs by November 2, 2022, prior to the corrective disclosure. Hopkins Decl. ¶75; Bravata Decl., Ex. E.[5] The second request for exclusion submitted by Michael Armand Recio Penson, purports to have acquired 12.616411 ADSs during the Class Period that were held through the corrective disclosure. Bravata Decl. Ex. E. It is not clear that Mr. Penson is a Class member as he did not provide any supporting documentation for his purchases. While Mr. Penson does not provide any reason for his exclusion request, he does not appear to take issue with any aspect of the Settlement and his purchases represent a minimal amount of PLDT ADSs in the public float.

---

[5] The Objection also takes issue with attorneys' fees, which is addressed in Lead Counsel's Memorandum of Points and Authorities in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses, and for an Award to Lead Plaintiff ("Fee and Expense Memorandum"), filed concurrently.

Accordingly, that the reaction of the Class is overwhelmingly positive supports final approval of the Settlement.

### 9. Terms of Proposed Attorneys' Fees and Additional Agreements (Rule 23(e)(2)(C)(iii) and Rule 23(e)(2)(C)(iv))

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." FED. R. CIV. P. 23(e)(2)(C)(iii). Lead Counsel seeks an award of attorneys' fees of $750,000, or 25% of the Settlement Fund, pursuant to the common fund doctrine, and reimbursement of $67,490.63 for expenses reasonably incurred in connection with their prosecution of this Action. *See* Hopkins Decl. ¶93. As set forth in the lodestar reports submitted herewith (Fee Decl. Exhibit 3A, 3B, and 3C), the requested fee award of $750,000 represents a negative "multiplier" of 0.94 to Lead Counsel's lodestar of $799,017.75. Hopkins Decl. ¶81. This fee request was fully disclosed in the Postcard Notice (Bravata Decl., Ex. C), approved by Lead Plaintiff (Ex. 1, Douglas Decl. at ¶¶10-11), and is consistent with the 25% benchmark for attorneys' fee awards in this Circuit. *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("[t]his circuit has established 25% of the common fund as a benchmark award for attorney fees.") Further, a negative multiplier, like the one here, is presumptively reasonable because it means Lead Counsel is seeking to be paid "for only a portion of the hours that they expended on the action." *Amgen*, 2016 WL 10571773, at *9.

Finally, the only agreements made by the Parties in connection with the Settlement are the Stipulation and the confidential Supplemental Agreement concerning the circumstances under which Defendants may terminate the Settlement based upon the number of exclusion requests. Hopkins Decl. ¶34; Stipulation (ECF 54-7) ¶7.6. It is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot leverage a better recovery by threatening to opt out, at the expense of the Class. Lead Plaintiff will provide the agreement to the Court for *in camera* review upon request.

16

**10. The Proposed Method for Distributing Relief is Effective (Rule 23(e)(2)(C)(ii))**

Lead Plaintiff has proposed a standard, well-established, and effective method for providing Notice and for distributing relief to the Class under Rule 23(e)(2)(C)(ii). Pursuant to the Preliminary Approval Order, 43,258 potential Class Members were notified of the Settlement and its terms either by Postcard Notice or email containing a direct link to the Notice and Claim Form on the Settlement website. Bravata Decl. ¶8. The Summary Notice was transmitted over *Globe Newswire*; and the Notice has been posted on a Settlement website: www.strategicclaims.net/pldt/, and contains information related to the current case status; important case dates; the claim filing link; and important documents such as the Notice and Claim Form, the Postcard Notice, the Preliminary Approval Order, and the Stipulation. *See* Bravata Decl. ¶¶10-12. The claim form requests information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation, which was prepared with the assistance of Lead Plaintiff's damages expert and is based primarily on the expert's event study and estimation of the amount of artificial inflation in the price of PLDT ADSs during the Class Period. *See* §III.B, *infra*.

**B. The Plan of Allocation Should Be Approved Because it Treats Class Members Equitably (Rule 23(e)(2)(D))**

Approval of a Plan of Allocation of Settlement proceeds "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. Pursuant to Rule 23(e)(2)(D), the Plan of Allocation must "treat[] class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). The Plan of Allocation here treats all eligible Class members equitably because each Class member (including Lead Plaintiff) will be subject to the same formulas for distribution of the Settlement and each Authorized Claimant will receive a pro rata share of the distribution. Hopkins Decl. ¶35. "It is reasonable to allocate the settlement funds to class members based on the extent of their

injuries or the strength of their claims on the merits." *Omnivision*, 559 F. Supp. 2d. at 1045.

As detailed in the Notice, the Plan of Allocation assumes that the price of PLDT's ADSs were artificially inflated throughout the Class Period. Stipulation, Ex. A-1, ECF 54-9 at 16.  The estimated alleged artificial inflation in the price of PLDT's ADSs was computed based on the alleged misstatements and the price change in the ADSs, net of market and industrywide factors, in reaction to Defendants' December 19, 2022 disclosure revealing, *inter alia*, that, from 2019 to 2022, PLDT spent PHP 379 billion on capital expenditures, an overrun of PHP 48 billion (USD 866 million). In order for a Class member to have a Recognized Loss under the Plan of Allocation, the PLDT ADS must have been purchased or acquired during the Class Period. The Plan of Allocation provides a specific formula for computing each Class member's "Recognized Loss" based on when the claimant purchased and sold PLDT's ADS. *See* Stipulation, Ex. A-1, ECF 54-9 at 16-21.

Depending on the number of eligible ADSs purchased by investors who elect to participate in the Settlement and when those ADSs were purchased and sold, the average distribution is estimated to be $0.58 per damaged ADS before deduction of Court-approved fees and expenses ($0.42 per ADS, net of requested fees, expenses, and awards). *See* Hopkins Decl. ¶67. The per ADS amount assumes all eligible Class members submit valid and timely Claim Forms. If fewer than all Class members submit valid and timely Claim Forms, which is likely, the distribution per ADS will be higher. Additionally, no distribution will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00. *See Redwen*, 2013 WL 12303367, at *8 (approving $20 *de minimis* threshold); *Destefano,* 2016 WL 537946, at *15 ($10 threshold).

If any portion of the Net Settlement Fund remains following distribution pursuant to the Plan of Allocation and is of such an amount that, in the discretion of Lead Counsel,  it is not cost effective to redistribute the amount to the Authorized Claimants,

such remaining funds, after payment of any further Notice and Administration Costs and Taxes, shall be donated to, subject to Court approval, the Investor Protection Trust, with which neither Lead Plaintiff nor Lead Counsel is affiliated. The Institute for Investor Protection is an independent academic center that promotes investor protection and educates investors about private remedies available to aggrieved investors.

Lead Plaintiff has received only one objection to the Plan of Allocation which should be overruled for procedural and substantive failures. *See* §III.A.8, *supra*. Finally, the Honorable Cormac J. Carney has preliminarily approved the Plan of Allocation and "preliminarily determines that the Settlement treats class members equitably." ECF 56 at 21.

For these reasons, Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund and should be approved.

### C. The Court Should Finally Certify the Class

The Parties have stipulated to class certification (ECF 54-7 at ¶3.1) and the Honorable Cormac J. Carney provisionally granted class certification for Settlement purposes after analyzing each of the factors under Federal Rule of Civil Procedure 23(a) and Rule 23(b)(3). ECF 56 at 6-12. The circumstances supporting the Honorable Cormac J. Carney's analysis are still present. Because there are no facts that have altered this preliminary decision, it should be affirmed. *See Perez v. DirecTV Grp. Holdings, LLC*, 2023 WL 1931376, at *4 (C.D. Cal. Jan. 23, 2023) (incorporating the class certification analysis from the preliminary approval order because "[n]othing since the Preliminary Approval Order counsels the Court to depart from its previous conclusions on the existence of a proper Settlement Class").

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter an Order finally: (i) Approving the Settlement, (ii) Approving the Plan of Allocation, and (iii) Certifying the Class for Settlement purposes.

DATED: June 10. 2024

**LEVI & KORSINSKY. LLP**

*/s/ David C. Jaynes*
David C. Jaynes (SBN 338917)
445 South Figueroa Street, 31st Floor
Los Angeles, CA  90071
Tel: (213) 985-7290
Email: djaynes@zlk.com

Shannon L. Hopkins (admitted *pro hac vice*)
Gregory M. Potrepka (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT  06905
Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: gpotrepka@zlk.com

*Lead Counsel for Lead Plaintiff Dr. Kevin Douglas and the Class*

20

CERTIFICATE OF COMPLIANCE

I, David C. Jaynes, the undersigned counsel of record for Lead Plaintiff, hereby certify that this brief contains 6,429 words, which complies with the 7,000 word limit of L.R. 11-6.1.

/s/ David C. Jaynes
David C. Jaynes

**LEVI & KORSINSKY, LLP**
445 South Figueroa Street, 31st Floor
Los Angeles, CA  90071
Tel: (213) 985-7290
Email: djaynes@zlk.com

21