**LEVI & KORSINSKY, LLP**
David C. Jaynes (SBN 338917)
445 South Figueroa Street, 31st Floor
Los Angeles, CA  90071
Tel: (213) 985-7290
Email: djaynes@zlk.com

*Lead Counsel for Lead Plaintiff*
*Dr. Kevin Douglas and the Class*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. KEVIN DOUGLAS, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> PLDT INC., MANUEL V. PANGILINAN, ALFRED S. PANLILIO, ANNABELLE L. CHUA, MARILYN A. VICTORIO-AQUINO, MA. LOURDES C. RAUSA-CHAN, GIL SAMSON D. GARCIA, JUNE CHERYL A. CABAL-REVILLA, AND JANE BASAS, <br><br> Defendants. | Case No. 2:23-cv-00885-FLA-(MAAx) <br><br> <u>CLASS ACTION</u> <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES AND FOR AN AWARD TO LEAD PLAINTIFF <br><br><br> Date: August 9, 2024 <br> Time: 1:30 p.m. <br> Judge: Hon. Fernando L. Aenlle-Rocha <br> Courtroom: 6B |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................iii

I.    PRELIMINARY STATEMENT ....................................................................... 1

II.   LEAD COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES
      IS REASONABLE AND SHOULD BE APPROVED.......................................3

      A.    A Reasonable "Percentage-of-the-Fund" Recovered is the Appropriate
            Method for Awarding Attorneys' Fees in Common Fund Cases .............. 4

      B.    The Requested 25% "Benchmark" Fee Award is Fair, Reasonable, and
            Appropriate Under Ninth Circuit Precedent ............................................. 6

            1.    *Vizcaino* Factor 1: The Proposed Settlement Is an Excellent Result
                  That Exceeds Comparable Class Action Settlements......................6

            2.    *Vizcaino* Factor 2: Continued Litigation Posed Serious Risk of a
                  Reduced Recovery for the Class, or No Recovery at All ...............8

            3.    *Vizcaino* Factor 3: Lead Counsel are Experienced Class Action
                  Practitioners Who Diligently and Skillfully Litigated Lead
                  Plaintiff's Claims Against Formidable Opposition ......................10

            4.    *Vizcaino* Factor 4: Lead Counsel Dedicated Significant Firm
                  Resources to this Action on Contingency, Without Guarantee of
                  Reimbursement or Compensation.................................................12

            5.    *Vizcaino* Factor 5: The Requested Fee is Consistent with Awards
                  Made in Similar Cases .................................................................13

            6.    The Reaction of the Class Supports Approval of Lead Counsel's Fee
                  Request.........................................................................................14

            7.    A Negative Lodestar Crosscheck Confirms that the Requested Fee
                  is Reasonable ...............................................................................16

III.  LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE.........17

IV.   LEAD PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO THE
      PSLRA IS REASONABLE............................................................................19

V.    CONCLUSION ...............................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abadilla v. Precigen, Inc.*,
  2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ...................................................15

*AdTrader, Inc. v. Google LLC*,
  7 F.4th 803 (9th Cir. 2021) ............................................................................4

*Ayala v. AT&T Mobility Servs.*, LLC,
  2024 U.S. Dist. LEXIS 48470 (C.D. Cal. Mar. 18, 2024)...........................19

*Becerra-South v. Howroyd-Wright Empl. Agency, Inc.*,
  2021 WL 606245 (C.D. Cal. Jan. 25, 2021) ................................................19

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ........................................................................................4

*Brown v. China Integrated Energy Inc.*,
  2016 WL 11757878 (C.D. Cal. July 22, 2016) ............................................12

*Chalmers v. City of Los Angeles*,
  796 F.2d 1205 (9th Cir. 1986)......................................................................17

*Defrees v. Kirkland*,
  2018 WL 11365544 (C.D. Cal. July 26, 2018)..............................................9

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................................10, 11, 17

*Farrar v. Workhorse Grp. Inc.*,
  2023 WL 5505981 (C.D. Cal. July 24, 2023)...............................................14

*Galavis v. Bank of Am., N.A.*,
  2020 WL 5898800 (C.D. Cal. July 14, 2020)................................................5

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).......................................................................5

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994).............................................................................17

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)................................................8

*Hunt v. Bloom Energy Corp.*,
  2024 WL 1995840 (N.D. Cal. May 6, 2024).........................................7, 8, 10

*In re Am. Apparel, Inc. S'holder Litig.*,
  2014 WL 10212865 (C.D. Cal. July 28, 2014)............................................19

*In re Amgen Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)...............................6, 16, 18

*In re Bluetooth Headset Prods. Liab. Litig.*,

iii

654 F.3d 935 (9th Cir. 2011)..................................................................4, 5, 6

*In re Broadcom Corp. Sec. Litig.*,
2005 U.S. Dist. LEXIS 41993 (C.D. Cal. Sept. 12, 2005) ......................13

*In re Capacitors Antitrust Litig.*,
2017 WL 9613950 (N.D. Cal. June 27, 2017) .........................................14

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005) ..................6, 8, 10, 14

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19. 2014) ..........................................11

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019)......................................................................5

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ....................................................18

*In re Mattel, Inc. Sec. Litig.*,
2022 WL 2826448 (C.D. Cal. May 18, 2022) ..........................................16

*In re Nutanix Inc., Sec. Litig.*,
3:21-cv-04080 (N.D. Cal. May 28, 2021) ................................................17

*In re Omnivision Techs. Inc.*,
559 F. Supp.2d 1036 (N.D. Cal. 2008) ...................................................6, 7

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)......................................................................5

*In re OSI Sys., Inc. Deriv. Litig.*,
2017 WL 5642304 (May 2, 2017) ............................................................19

*In re Portland GE Sec. Litig.*,
2022 WL 844077 (D. Or. Mar. 22, 2022) ................................................14

*In re Quality Systems, Inc. Securities Litigation*,
No. 8:13-cv-01818 (C.D. Cal., Nov. 19, 2018) ....................................7, 12

*In Re Restoration Robotics, Inc. Securities Litigation*,
5:18-cv-03712 (N.D. Cal. Sept. 9, 2021)..................................................17

*In re Skilled Healthcare Grp., Inc.*,
2011 WL 280991 (C.D. Cal. Jan. 26, 2011) .......................................11, 15

*Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)........................................7, 18

*Johnson v. Gen. Mills, Inc.*,
2013 WL 3213832 (C.D. Cal. June 17, 2013) .....................................16, 17

*Kaye v. Immunocellular Therapeutics, Ltd.*,
2019 U.S. Dist. LEXIS 201657 (C.D. Cal. Nov. 19, 2019)......................13

*Keith v. Volpe*,
    501 F. Supp. 403 (C.D. Cal. 1980) ...................................................................16

*Killyoung Oh v. Hanmi Fin. Corp.*,
    No. 2:20-cv-02844-FLA (JCx) (C.D. Cal. Mar. 19, 2024).............................14

*Kim v. Allison*,
    8 F.4th 1170 (9th Cir. 2021) ...............................................................................5

*Kmiec v. Powerwave Techs., Inc.*,
    2016 WL 5938709 (C.D. Cal. July 11, 2016).............................................14, 18

*Lowery v. Rhapsody Int'l, Inc.*,
    75 F.4th 985 (9th Cir. 2023) ................................................................................7

*Mandalevy v. Bofi Holding, Inc.*,
    2022 WL 4474263 (S.D. Cal. Sept. 26, 2022).................................12, 17, 18

*Moore v. Verizon Commc'ns Inc.*,
    2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ..................................................15

*Nat'l Rural Telecommms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................14

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) .............................................................................6

*Ramsey v. MRV Commc'ns. Inc.*,
    2010 WL 11596641 (C.D. Cal. Nov. 16, 2010)..................................................13

*Redwen v. Sino Clean Energy, Inc.*,
    2013 WL 12129279 (C.D. Cal. Mar. 13, 2013) ..................................................8

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990)..............................................................................6

*Spann v. J.C. Penney Corp.*,
    211 F. Supp. 3d 1244 (C.D. Cal. 2016) .............................................................16

*Staton v. Boeing, Co.*,
    327 F.3d 938 (9th Cir. 2003)........................................................................14, 19

*Sudunagunta v. NantKwest, Inc.*,
    2019 WL 2183451 (C.D. Cal. May 13, 2019) ...................................................10

*Sypherd v. Lazy Dog Restaurants, LLC*,
    2023 WL 1931319 (C.D. Cal. Feb. 10, 2023) ...................................................12

*Taylor v. TIC - The Indus. Co.*,
    2018 WL 6131198 (C.D. Cal. Aug. 1, 2018)........................................................5

*Todd v. STARR Surgical Co.*,
    2017 WL 4877417 (C.D. Cal. Oct. 24, 2017)...........................................8, 12, 13

*Vataj v. Johnson*,
    2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) .......................................................7

v

*Vigueras v. Red Robin Int'l, Inc., et al.*,
  2020 WL 13042573 (C.D. Cal. Dec. 2, 2020) ............................................................. 5

*Vincent v. Huges Air West, Inc.*,
  557 F.2d 759 (9th Cir. 1977) ............................................................................. 4

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................. 6, 8, 16

*Wing v. Asarco Inc.*,
  114 F.3d 986 (9th Cir. 1997) ........................................................................ 11, 12

**Statutes**

15 U.S.C. §78u-4(a)(4) ........................................................................................ 3

15 U.S.C. §78u-4(a)(6) ........................................................................................ 4

**Other Authorities**

L.T. Bulan, L.E. Simmons, *Securities Class Action Settlements, 2023 Review and Analysis*, Cornerstone Research (2024) ................................................................. 7

Private Securities Litigation Reform Act of 1995 ...................................................... 4, 19

*Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024) ................................................................................................ 7

**Rules**

FED. R. CIV. P. 23(h) .......................................................................................... 4

## I.    PRELIMINARY STATEMENT

Lead Counsel respectfully submits its Motion for an Award of Attorneys' Fees and Litigation Expenses, and for an Award to Lead Plaintiff ("Fee and Expense Application"), as supported by this Memorandum of Points and Authorities ("Fee and Expense Memorandum"), the Declaration of Shannon L. Hopkins in Support of (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement, Approval of the Plan of Allocation, and Final Certification of the Class and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses and for an Award to Lead Plaintiff ("Hopkins Decl."), and supporting exhibits thereto, filed herewith, and the Stipulation of Settlement and its attachments filed with Court on February 16, 2024 (ECF 54-7 through ECF 54-13). Lead Counsel respectfully moves the Court for (i) an award of attorneys' fees in the amount of $750,000, or 25% of the Settlement Amount, for securing this favorable result for the Class; (ii) payment of its litigation expenses in the amount of $67,490.63, which it reasonably incurred in pursuing this Action; and (iii) an award of $5,000 to Lead Plaintiff, Dr. Kevin Douglas, in recognition of the time and effort Dr. Douglas spent carrying out his duties to represent the Class.[1]

The proposed Settlement is the result of a detailed investigation, hard-fought litigation, and rigorous mediation. *See* Hopkins Decl.¶79. [2] As a result of arms-length settlement negotiations overseen by well-respected mediator, Jed D. Melnick, Esq. of JAMS, Lead Plaintiff and Lead Counsel achieved an exceptional recovery of $3 million for the benefit of the Class.[3] Lead Counsel has not received any compensation for their

---

[1] A Proposed Order Awarding Attorneys' Fees and Litigation Expenses, and Award to Lead Plaintiff will be submitted with Lead Plaintiff's reply papers.

[2] The terms of the Settlement are set forth in the Stipulation of Settlement dated February 16, 2024 (the "Stipulation" or "Settlement"). ECF 54-7. Unless otherwise noted, all internal quotation marks and citations are omitted, all emphasis is added, and all capitalized terms not defined herein shall have the same meaning ascribed to them in the Stipulation. "Ex." refers to exhibits attached to the Hopkins Declaration.

[3] The Class consists of all persons or entities who purchased or otherwise acquired PLDT ADS during the period from January 1, 2019, through December 21, 2022, inclusive. Excluded from the Class are: (1) the defendants; (2) any individual defendant's Immediate Family Members; (3) any firm, trust,

work litigating this case, though they have expended considerable firm resources. Lead Counsel's request for an award of attorneys' fees and litigation expenses is reasonable and well within the range approved in similar matters. In litigating this case, Lead Counsel advanced costs and devoted substantial time on a contingent basis. Lead Counsel's efforts include, *inter alia,* review and analysis of (i) PLDT's public filings with the SEC; (ii) PLDT's public filings with the Philippine Stock Exchange, Inc.; (iii) Defendants' other public statements, including quarterly press releases, earning call transcripts, and presentations; (iv) reports of securities and financial analysts, news articles, and other commentary and analysis concerning PLDT and the industry in which it operates; and (v) review of pertinent court filings. Hopkins Decl. ¶¶12-30. In addition, Lead Counsel hired investigators who located confidential witnesses concerning the allegations in the Complaint and consulted with damages, market efficiency and loss causation experts. *Id.* Lead Counsel also undertook to serve the Complaint on all individual defendants according to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents and through personal service in the Philippines.

In performing the above tasks, Lead Counsel spent 1,262.02 hours of professional time, equating to a loadstar of $799,017.75. *See* Ex. 3, Declaration of Shannon L. Hopkins on Behalf of Levi & Korsinsky, LLP in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses ("Fee Decl.")  ¶7. Thus, Lead Counsel's request for an award of attorneys' fees in the amount of $750,000 represents a 0.94 ***negative*** multiplier compared to its lodestar figure of $799,017.75. *Id.* In the Order Granting Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") the Honorable Cormac J. Carney preliminarily approved the $750,000 fee, noting that "Lead Counsel achieved a

---

corporation, or other entity in which a defendant has or had a controlling interest; (4) the Company's subsidiaries and affiliates; (5) any person who is an officer, director, or controlling person of the Company; (6) the Company's directors' and officers' liability insurance carriers, and any affiliates or subsidiaries thereof; (7) the legal representatives, affiliates, heirs, successors in interest, or assigns of any such excluded person or entity; and (8) those Class Members who submit valid and timely requests for exclusion.

significant result for the class and has ably litigated this case." ECF 56 at 20. There are no facts that have altered that preliminary decision, which should be affirmed. Lead Counsel also requests reimbursement of its out-of-pocket litigation expenses incurred in pursuing this Action, in the amount of $67,490.63. *See* Fee Decl. ¶8. These expenses were reasonable and necessary to prosecute and successfully resolve the claims against Defendants. Finally, Lead Counsel seeks a service award of $5,000 for Lead Plaintiff, pursuant to 15 U.S.C. §78u-4(a)(4), in connection with his representation of the Class.

The reaction of the Class supports approval of Lead Counsel's application for fees and expenses. There have been no objections to Lead Counsel's request for litigation expenses or the award to Lead Plaintiff. Lead Counsel has received only one meritless *pro se* objection to the fee request devoid of any substance and which was prematurely submitted before Lead Counsel filed its Fee and Expense Application and should, thus, be overruled. ECF 58. There have also been only two requests for exclusion involving only fourteen PLDT ADSs and which lack merit. *See* Ex. 4, the Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl."), Ex. E.

For the reasons set forth herein, and in the Hopkins Decl. filed concurrently herewith, Lead Counsel respectfully requests; (i) an award of attorneys' fees in the amount of $750,000, or 25% of the Settlement Amount, for securing this favorable result for the Class; (ii) payment of its litigation expenses in the amount of $67,490.63, which it reasonably incurred in pursuing this Action; and (iii) an award of $5,000 to Lead Plaintiff Dr. Kevin Douglas in recognition of the time and effort he spent fulfilling his Lead Plaintiff duties to represent the Class.

## II.   LEAD COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV.

P. 23(h). The Private Securities Litigation Reform Act of 1995 (the "PSLRA") provides that "[t]otal attorneys' fees and expenses rewarded by the court to counsel for the plaintiff class shall not exceed reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6). Accordingly, determination of whether the requested fee award is reasonable rests within the sound discretion of the Court, based on the circumstances of the case. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942-43 (9th Cir. 2011).

As discussed below, Lead Counsel's requested fee and expense award is reasonable under the Ninth Circuit factors and well within the range of fees typically awarded in similar matters.

### A. A Reasonable "Percentage-of-the-Fund" Recovered is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

The Supreme Court and Ninth Circuit recognize that attorneys who obtain a "common fund" benefit for non-appearing class members are entitled to compensation for their services from that settlement fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *AdTrader, Inc. v. Google LLC*, 7 F.4th 803, 808 (9th Cir. 2021) (in common fund cases, "counsel is allowed to recover attorneys' fees from any settlement fund, so that those class members who benefit from the lawsuit at no cost to themselves are not unjustly enriched at the lawyers' expense"); *Vincent v. Huges Air West, Inc*., 557 F.2d 759, 769 (9th Cir. 1977) (an "attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim[,] is entitled to recover from the fund the costs of his litigation, including attorneys' fees."). The common fund doctrine serves to fairly compensate counsel and to ensure that all class members proportionately contribute to the litigation costs expended on their behalf. *Vincent*, 557 F.2d at 696.

To determine what portion of a common fund is reasonable to award as an attorney's fee, courts have employed the "percentage-of-recovery" and "lodestar"

4

calculation methods. *Bluetooth Headset*, 654 F.3d at 942-43. Under the percentage-of-recovery method, "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021), quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998). The lodestar method requires multiplying the number of hours class counsel reasonably expended on the litigation by a reasonable hourly rate. *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 949 (9th Cir. 2015).

The Ninth Circuit prefers the percentage-of-recovery method in cases that result in common-fund settlements because "the benefit to the class is easily quantified[.]" *Bluetooth Headset*, 654 F.3d at 942. In addition, application of the percentage-of-recovery method reduces judicial burdens by eliminating the detailed and "more time-consuming" lodestar analysis. *Id.*; *Vigueras v. Red Robin Int'l, Inc., et al.*, 2020 WL 13042573, at *4 (C.D. Cal. Dec. 2, 2020) (determining class counsel's attorneys' fees based on the percentage-of-recovery method and considering lodestar figures for the "singular" purpose of ensuring that class counsel is not overcompensated). The percentage-of-recovery method is particularly appropriate where, as here, "the defendants provide monetary compensation to the plaintiffs and class benefit is easy to quantify." *Kim*, 8 F.4th, at 1181, quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019).

As described in §II.B.7 *infra*, Lead Counsel incurred a negative .94 lodestar multiplier. Accordingly, the Class benefits from applying the percentage-of-the fund method, as the lodestar method would result in higher attorneys' fees. *Galavis v. Bank of Am., N.A*., 2020 WL 5898800, at *4 (C.D. Cal. July 14, 2020) (determining that class counsel's request for attorneys' fees based on the percentage-of-recovery method was reasonable because the common fund fee award represented a multiplier of 0.91 compared to class counsel's lodestar figure); *Taylor v. TIC - The Indus. Co*., 2018 WL 6131198, at *10 (C.D. Cal. Aug. 1, 2018) (approving a percentage-of-recovery based award of 25% with a negative lodestar multiplier of 0.5). In sum, the weight of authority

supports application of the percentage-of-recovery method in determining Lead Counsel's award of attorneys' fees.

## B. The Requested 25% "Benchmark" Fee Award is Fair, Reasonable, and Appropriate Under Ninth Circuit Precedent

Under the percentage-of-recovery method, the Ninth Circuit typically applies a 25% benchmark for a reasonable fee award. *Bluetooth Headset*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award"). *See also, Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) (same); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (same). Using that 25% benchmark as a baseline, courts review the reasonableness of the fee award by considering the *Vizcaino* factors of: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Amgen Sec. Litig.*, 2016 WL 10571773, at *8 (C.D. Cal. Oct. 25, 2016), citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (finding class counsel's request for an attorneys' fee award of 25% of the total settlement amount reasonable under the percentage of the common fund method because "it both matches the 'benchmark' and meets the [*Vizcaino*] reasonableness factors"). Courts also consider (6) the reaction of the class; and (7) a comparison with class counsel's lodestar as relevant factors for determining the reasonableness of an award of attorneys' fees. *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, 2005 WL 1594389, at *15-17 (C.D. Cal. June 10, 2005); *In re Omnivision Techs. Inc.*, 559 F. Supp.2d 1036, 1048 (N.D. Cal. 2008).

Consideration of each of the above factors confirms that Lead Counsel's requested fee of 25% of the Settlement, or $750,000, is fair and reasonable.

### 1. *Vizcaino* Factor 1: The Proposed Settlement Is an Excellent Result That Exceeds Comparable Class Action Settlements

"The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class." *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th

Cir. 2023).  In evaluating the result achieved, courts consider the Settlement as a percentage of recoverable damages.  *Omnivision*, 559 F. Supp. 2d at 1046 (finding that a settlement was a "substantial achievement" where the recovery represented 9% of the possible damages, which was more than triple the average recovery in securities class action settlements); *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) (finding settlement was a "favorable outcome" where the settlement amount represented 10% of the total maximum damages potentially available); *In re Quality Systems, Inc. Securities Litigation*, No. 8:13-cv-01818, ECF 117, 120 (C.D. Cal., Nov. 19, 2018) (approving the $19 million Settlement which represented approximately 7%-13% of estimated damages).

Here, the $3 million recovery under the proposed Settlement constitutes approximately 15.4% of the maximum theoretical aggregate damages of $19.5 million, assuming Lead Plaintiff prevailed on all claims against Defendants.  In the Preliminary Approval Order, the Honorable Cormac J. Carney found that the Settlement Amount is "an exceptional result."  ECF 56 at 18. Moreover, the proposed Settlement exceeds recent comparable class action settlements.  *See Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *6, 8 (N.D. Cal. May 6, 2024) (finding that class counsel's requested fee of 30% of the settlement amount was reasonable because the settlement represented 5.2% of the estimated maximum damages potentially available in the action, and was therefore a good result for the class); *Vataj v. Johnson*, 2021 WL 5161927, at *9 (N.D. Cal. Nov. 5, 2021) (finding that the $10 million settlement represents an "excellent result" for the class where it represents 2% of the $468 million in losses estimated by plaintiffs' expert); *see also* Ex. 5, Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* at 26, Figure 22 (NERA Jan. 23, 2024) (median ratio of settlement to investor losses was 1.8% in 2023); Ex. 6, L.T. Bulan, L.E. Simmons, *Securities Class Action Settlements, 2023 Review and Analysis*, Cornerstone Research (2024) at 6, Figure 5 (stating that the median comparable securities class action settlements in Rule 10b-5 cases in 2023 resulted in a

recovery of 15.2% of estimated damages). Accordingly, the Court should approve Lead Counsel's request for attorneys' fees.

### 2.  *Vizcaino* Factor 2: Continued Litigation Posed Serious Risk of a Reduced Recovery for the Class, or No Recovery at All

It is commonly known that "'securities actions are highly complex and … securities class litigation is notably difficult and notoriously uncertain.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13-14 (N.D. Cal. Dec. 18, 2018); *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12129279, at *5-6 (C.D. Cal. Mar. 13, 2013) (similar). Courts consider such a risk another important factor in determining a fair fee award. *Vizcaino*, 290 F.3d 1043, at 1048 ("[r]isk is a relevant circumstance"). In particular, courts view the risk that further litigation would lead to reduced recovery, or no recovery at all, as a significant factor weighing in favor of awarding fees.  *See e.g. Heritage Bond*, 2005 WL 1594389, at *14 ("the risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award"); *Hunt*, 2024 WL 1995840, at *8 (finding that class counsel's requested fee of 30% of the settlement amount was reasonable because plaintiff took significant risk in litigating the case even though its efforts might result in not recovery at all); *Todd v. STARR Surgical Co.*, 2017 WL 4877417, at *5 (C.D. Cal. Oct. 24, 2017) (award of a 25% attorneys' fee was reasonable because of the significant risk of receiving an inferior award if litigation were to continue given the high standard for proving the elements of scienter, causation, and damages).

Here, while Lead Plaintiff remains confident in his ability to prevail on the motion to dismiss, Defendants have expressly denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action.  Indeed, Defendants' Motion to Dismiss challenged all aspects of the Complaint, including falsity, scienter, and loss causation. Hopkins Decl. ¶¶26-29. For example, Defendants argued that, despite the admitted budget overrun, PLDT's historically reported capital

expenditure figures were accurate as evidenced by the fact PLDT never restated those figures. *See* ECF 47 at 13-16, 20-23. Defendants further argued that their capital expenditure statements were forward-looking and protected by the PSLRA's safe harbor as they discussed "continuing" budget overruns and inactionable opinions for which Lead Plaintiff failed to allege were not reasonably held. Defendants further argued that their 5G statements were literally true because, while Defendant Victorio-Aquino purportedly "misspoke" during the Special Call when she said PLDT "stopped" the 5G rollout during the Class Period, investors were not misinformed because in the same Special Call, Defendant Panlilio corrected her statement stating the rollout merely "slowed down." This was an issue of fact and Lead Plaintiff would have to convince a jury to accept his version of the facts. Defendants also advanced credible scienter arguments that they had no personal pecuniary motive to make false statements, such as to profit from insider selling, and that Lead Plaintiff failed to adequately allege the reports they had access to contained any information contradicting their public statements. Defendants were likely to continue those challenges throughout the litigation at class certification, summary judgement, and trial.

Defendants also advanced several credible arguments disputing both causation and damages, thereby highlighting the risk that continued litigation could result in reduced, or no, recovery for the Class. For instance, Defendants likely would have argued that Lead Plaintiff has not plead facts demonstrating that the ADS price drop was caused by the purported revelation of prior misstatements instead of PLDT's disclosure of new "firm-specific facts" about its future financial condition—i.e., the impact of the capital expenditure budget overrun on PLDT's financial results in the future. Hopkins Decl. ¶56. Providing loss causation and damages often becomes a "hotly contested trial with a battle of the experts that could be difficult for a jury to understand." *Defrees v. Kirkland*, 2018 WL 11365544, at *5 (C.D. Cal. July 26, 2018). If Defendants' expert won, the Court or the jury may have found that Lead Plaintiff was entitled to significantly lower damages than anticipated—or none at all.

Even assuming Lead Plaintiff was successful in proving liability and damages, continuing to litigate these issues would likely delay recovery for the Class and decrease the amount actually recovered below the $3 million Settlement Amount.  Hopkins Decl. ¶44; *see also Sudunagunta v. NantKwest, Inc.*, 2019 WL 2183451, at *5 (C.D. Cal. May 13, 2019) ("[c]ontinued litigation carries the risk for the class of an inferior award or nothing"). *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *10, (N.D. Cal. Feb. 11, 2016) ("continuing litigation would not only be costly—representing expenses that would take away from any ultimate classwide recovery—but would also delay resolution and recovery for Settlement Class Members"). Moreover, were Lead Plaintiff to litigate this case through trial, the costs of litigation may exceed maximum damages. Thus, the risk of reduced recovery, or no recovery at all, is present here. By settling now, the Class will avoid these risks and delays and will receive an immediate recovery. Accordingly, this factor strongly favors approval of the requested fee.

### 3. *Vizcaino* Factor 3: Lead Counsel are Experienced Class Action Practitioners Who Diligently and Skillfully Litigated Lead Plaintiff's Claims Against Formidable Opposition

"The prosecution and management of a complex national class action requires unique legal skills and abilities." *Heritage Bond*, 2005 WL 1594389, at *12 (citation omitted).  In evaluating the quality of class counsel's representation of the Class, courts consider the level of effort required of counsel in prosecuting its case. *Hunt*, 2024 WL 1995840, at *8 (finding that class counsel's fee request was reasonable because class counsel demonstrated its skill and professionalism by conducting an extensive factual investigation and defending against motions to dismiss).

Here, Lead Counsels' fee request is reasonable because they expended significant time and effort prosecuting the Action and achieving the Settlement.  As set forth in in the Hopkins Declaration, Lead Counsel diligently investigated the claims, defenses, and underlying events that are the subject of the Action, devoted substantial time and resources researching and drafting their opposition to Defendants' Motion to Dismiss, and drafted detailed mediation statements used to facilitate comprehensive discussions

at mediation with Defendants to produce a beneficial result for the Class. Hopkins Decl. ¶¶21-32. The Complaint was based on Lead Counsel's investigative efforts, which included a thorough investigation of the claims and facts underlying this Action, necessitating in-depth reviews and analysis of *inter alia*: (i) PLDT's public filings with the SEC; (ii) PLDT's public filings with the Philippine Stock Exchange, Inc.; (iii) Defendants' other public statements, including quarterly press releases, earning call transcripts, and presentations; (iv) reports of securities and financial analysts, news articles, and other commentary and analysis concerning PLDT and the industry in which it operates; and (v) review of pertinent court filings. *Id.*, ¶22. Lead Plaintiff also retained an investigator who interviewed former PLDT employees in the Philippines about the issues in this case, and retained financial experts to advise on market efficiency, loss causation and damages. *Id.* Zealous advocacy on behalf of the class in the face of qualified opposition counsel supports a fee award. *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997).

The clear benefit of Lead Counsel's work product to the Class is evidenced by the fact that this is not a case where Lead Counsel could "piggy back" off a previous investigation by other plaintiffs or regulators. *Destefano*, 2016 WL 537946, at *17 (finding the risks of continued litigation substantial in part because "there was no government investigation or accounting restatement—ordinarily, hallmarks of securities fraud that might suggest a case has merit"); *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19. 2014) (finding class counsel's fee request reasonable because counsel independently developed factual allegations and legal theories without the benefit of a "road map" established by a government investigation). Rather, this is a case where Lead Counsel was required to use its considerable experience in developing persuasive claims that convinced Defendants to settle. *See* Ex. 2, Levi & Korsinsky Firm Resume; *In re Skilled Healthcare Grp., Inc.*, 2011 WL 280991, at *5 (C.D. Cal. Jan. 26, 2011) (granting $750,000 in attorneys' fees on a $3 million settlement because "a wealth of experience in securities litigation"

1    "deserves substantial compensation.").

2        Moreover, Lead Counsel faced formidable adversaries. Throughout this

3    litigation, Defendants were represented by a prominent international defense firm with

4    significant experience in securities litigation.  Courts evaluate the level of skill class

5    counsel demonstrated in the litigation in relation to the skill and experience of opposing

6    counsel.  *Wing*, 114 F.3d at 989 (affirming class counsel's fee award in part because of

7    the district court's praise for class counsel's work in light of "the quality of opposition

8    counsel"); *STAAR Surgical*, 2017 WL 4877417, at *5 (finding class counsel's fee

9    request reasonable because of the considerable skill it demonstrated in the litigation

10    considering it did so "against experienced, highly skilled opposing counsel").

11    Accordingly, this factor supports Lead Counsel's fee request.

12                **4.    *Vizcaino* Factor 4: Lead Counsel Dedicated Significant Firm
13                        Resources to this Action on Contingency, Without Guarantee of
                          Reimbursement or Compensation**

14        Courts view the contingent nature of class counsel's compensation, coupled with

15    their out-of-pocket expenses put towards pursuing complex litigation, as indicators of a

16    fee request's reasonableness. *Mandalevy v. Bofi Holding, Inc.*, 2022 WL 4474263, at

17    *13 (S.D. Cal. Sept. 26, 2022) (finding that class counsel's 2,323 billable hours and

18    $138,631.36 spent litigating the action weighed in favor of approving their 25% fee

19    request considering the risk of non-payment associated with compensation on a

20    contingent-fee basis); *Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at

21    *11 (C.D. Cal. July 22, 2016) ("[the] significant financial burden and the amount of

22    time devoted by Lead Counsel to this case support the requested attorneys' fees

23    award"); *Sypherd v. Lazy Dog Restaurants, LLC*, 2023 WL 1931319, at *5 (C.D. Cal.

24    Feb. 10, 2023) (Aenlle-Rocha, J.) ("Courts routinely enhance fees for attorneys who

25    assume representation in common fund cases on a contingent basis to compensate them

26    for the risk."). Additionally, "public policy concerns favor the award of reasonable

27    attorneys' fees and expenses in securities class action litigation[.]" *Quality Systems,* No.

28    8:13-cv-01818, ECF 120 at 3.

Here, Lead Counsel undertook this Action and assumed a "substantial risk that there would be no recovery when it took the case on a contingent fee basis." *In re Broadcom Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 41993, at *20 (C.D. Cal. Sept. 12, 2005) (approving class counsel's fee award of 25% in because class counsel devoted substantial time and expenses litigating its action despite the risk of non-payment associated with litigating complex securities fraud issues); Hopkins Decl. ¶86. Nonetheless, Lead Counsel diligently pursued the claims on behalf of the Class, dedicating 1,262.02 hours of professional time, representing lodestar of $799,017.75, in addition to expending $67,490.63 in out-of-pocket expenses without guarantee that they would be reimbursed. Fee Decl. ¶¶7-8. Unlike Defendants' counsel, who have been compensated for their time at hourly rates, and have received reimbursements for their expenses, Lead Counsel has not been compensated for any time or expenses spent on this Action since its inception and would have received no compensation had they not achieved this successful result for the Class. Hopkins Decl. ¶86. As described *supra* in §II.B.2, the risk of reduced or no recovery from prolonged litigation in complex actions of this nature is very real.

Accordingly, the considerable firm resources Lead Counsel devoted to this case without guarantee of reimbursement or compensation supports finding that their 25% fee request is reasonable.

### 5. *Vizcaino* Factor 5: The Requested Fee is Consistent with Awards Made in Similar Cases

This Court and others in the Ninth Circuit routinely award attorneys' fees representing 25% of the Settlement Amount in complex securities fraud cases like this one. *See STAAR Surgical*, 2017 WL 4877417, at *6 (awarding 25% of $7 million settlement amount); *Kaye v. Immunocellular Therapeutics, Ltd.*, 2019 U.S. Dist. LEXIS 201657, at *20 (C.D. Cal. Nov. 19, 2019) (awarding 25% of $1.15 million settlement amount); *Ramsey v. MRV Commc'ns. Inc.*, 2010 WL 11596641, at *8 (C.D. Cal. Nov. 16, 2010) (awarding 25% of $10 million settlement amount); *In re Portland GE Sec.*

*Litig.*, 2022 WL 844077, at *10 (D. Or. Mar. 22, 2022) (awarding 25% of $6.75 million settlement amount); *Farrar v. Workhorse Grp. Inc.*, 2023 WL 5505981, at *9 (C.D. Cal. July 24, 2023) (awarding 25% of $35 million settlement amount); *see also*, *Killyoung Oh v. Hanmi Fin. Corp.*, No. 2:20-cv-02844-FLA (JCx), ECF 88 (C.D. Cal. Mar. 19, 2024) (Aenlle-Rocha, J.) (granting preliminary approval in a securities class action case for one-third of a $3,000,000 settlement).

Lead Counsel, thus, respectfully requests that the Court approve its request for attorneys' fees in the amount of 25% of the Settlement Amount, totaling $750,000, which is the Ninth Circuit's benchmark. *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003); *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *3 (N.D. Cal. June 27, 2017) (Ninth Circuit applies "a twenty-five percent benchmark" in percentage of the fund cases).

### 6. The Reaction of the Class Supports Approval of Lead Counsel's Fee Request

Courts in the Ninth Circuit consider the reaction of the class when deciding whether to award the requested fee. *Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in determining the proper fee award"). A "small number of objections and requests for exclusion supports final approval." *Kmiec v. Powerwave Techs., Inc.*, 2016 WL 5938709, at *4 (C.D. Cal. July 11, 2016); *Nat'l Rural Telecommms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

In accordance with the Preliminary Approval Order, the Court-approved Claims Administrator, Strategic Claims Services, disseminated copies of the Postcard Notice to potential class members, published the Summary Notice and posted the Stipulation, Notice, Postcard Notice, and Proof of Claim form on the Claim Administrator's website.  Bravata Decl. ¶¶2-12. To date, 43,258 potential Class Members have been

1  notified either by Postcard Notice or email containing a direct link to the Notice and
2  Claim Form on the Settlement website. *Id.* at ¶8. Class members were informed in the
3  Notice that Lead Counsel would move for an award of attorneys' fees in an amount of
4  25% of the Settlement Amount, payment of litigation expenses, and an award to Lead
5  Plaintiff. Hopkins Decl. at ¶62. Class members were also advised of their right to object
6  to these requests, and that such objections are required to be filed with the Court and
7  served on Counsel no later than July 15, 2024.  *Id.*; ECF 54-9 at 13.

8         While the objection deadline has not passed, Lead Counsel has received only one
9  *pro se* objection to Lead Counsel's fee request and the proposed Plan of Allocation. *See*
10  ECF 58 (the "Objection"). The Objection does not object to Lead Counsel's request for
11  reimbursement of litigation expenses or Lead Plaintiff's request for a service award.
12  With respect to Lead Counsel's request for attorney's fees, the Objection states only
13  that "Lead Counsel has not shown sufficient time or expense spent to justify the
14  payment of $750,000," but fails to explain why a 25% fee (which was preliminarily
15  approved) is not fair and reasonable in this case. ECF 58 at ¶8. Indeed, the Objection is
16  entirely silent about the results Lead Counsel achieved in light of the continued risks of
17  litigation. Moreover, while the Objection states that Lead Counsel did not provide
18  sufficient time or expense data to justify the award, it was prematurely filed prior to
19  when Lead Counsel's fee application was due. Thus, the Objection fails to appreciate
20  that a 25% fee would result in a ***negative*** lodestar multiplier. *Abadilla v. Precigen, Inc.*,
21  2023 WL 7305053, at *13 (N.D. Cal. Nov. 6, 2023) (overruling objection to request for
22  attorney's fees where "the Court finds the request for attorneys' fees to be reasonable
23  under both the Ninth Circuit's benchmark and the lodestar cross-check[.]").

24         Unreasoned objections like this one are improper and should not be sustained.
25  *Skilled Healthcare Grp.*, 2011 WL 280991, at *6 ("the Court is not inclined to stray
26  from the Ninth Circuit's twenty-five percent benchmark based on a lone objection
27  unsupported by specific facts"); *Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at
28  *10 (N.D. Cal. Aug. 28, 2013) (overruling objection to attorneys' fees and expenses for

providing "no specific reason as to why the Settlement should not be approved based on Class Counsel's request."); *In re Mattel, Inc. Sec. Litig.*, 2022 WL 2826448, at \*5 (C.D. Cal. May 18, 2022) (overruling objection to attorneys' fees where objector offers no basis for his calculation of substituted figure for what the attorneys' fees ought to be).

Moreover, Lead Plaintiff supports the requested fee award. *See* Ex. 1, Declaration of Lead Plaintiff Dr. Kevin Douglas in Support of: (a) Motion For Final Approval of Class Action Settlement, Approval of the Plan of Allocation, and Final Certification of the Class and (b) Lead Counsel's Motion for an Award of Attorney's Fees and Litigation Expenses, and for an Award to Lead Plaintiff ("Douglas Decl.") ¶10. Accordingly, the reaction of the Class supports Lead Counsel's fee request.

### 7.    A Negative Lodestar Crosscheck Confirms that the Requested Fee is Reasonable

While courts in the Ninth Circuit prefer the percentage-of-recovery method for determining attorneys' fees in common fund cases, "[w]here a court employs the percentage-of-recovery method, the lodestar method is often used as a cross-check to assess reasonableness." *Johnson v. Gen. Mills, Inc.*, 2013 WL 3213832, at \*5 (C.D. Cal. June 17, 2013), citing *Vizcaino*, 290 F.3d at 1050-51. Courts routinely approve fee awards in complex class action cases with lodestar multipliers between one and four. *See e.g. Vizcaino*, 290 F.3d at 1051 (affirming fee award with 3.65 lodestar multiplier); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) (awarding fees with lodestar multiplier of 3.07); *Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (awarding fees with lodestar multiplier of 3.5). A "negative" lodestar multiplier, meaning class counsel's requested fee falls below its lodestar figure for the action, is a strong indicator that the requested fee is reasonable. *Amgen*, 2016 WL 10571773, at \*9 ("courts have recognized that a percentage fee that falls below counsel's lodestar strongly supports the reasonableness of the award").

The lodestar cross-check in this case readily confirms that the requested fee of 25% of the Settlement Amount is fair and reasonable, as Lead Counsel is requesting a fee that is substantially *below* its lodestar figure.  Fee Decl. ¶7. Lead Counsel spent a

total of 1,262.02 hours of professional time pursuing this Action. *Id*. Based on Lead Counsel's billing rates during the litigation, its total lodestar for this litigation is $799,017.75, resulting in a negative lodestar multiplier of 0.94.

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Destefano*, 2016 WL 537946, at *19, citing *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986). Here, Lead Counsel's hourly billing rates range from $500 for associates to $1,000 for partners. Fee Decl. ¶5. These rates are comparable to those of peer plaintiff and defense firms litigating matters of similar complexity and have been approved by Courts in this District and others. *See e.g. Mandalevy*, 2022 WL 4474263, at *14 (approving of attorney rates of $335 to $1,025); *In re Nutanix Inc., Sec. Litig.*, 3:21-cv-04080, ECF 138 (N.D. Cal. May 28, 2021) (finding Levi & Korsinsky's lodestar figure reasonable with firm rates of $300 to $1,050); *In Re Restoration Robotics, Inc. Securities Litigation*, 5:18-cv-03712, ECF 127 (N.D. Cal. Sept. 9, 2021) (granting Levi & Korsinsky's award of attorneys' fees with firm rates of $325 to $1,050).

Accordingly, Lead Counsel's requested fee of $750,000, or 25% of the Settlement Amount, is reasonable under the lodestar cross-check.

## III. LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE

The law permits attorneys to recover "out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). *See also Gen. Mills*, 2013 WL 3213832, at *6 (quotation omitted) (attorneys may "recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters"). Reasonable expenses may include "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees." *Id.*, quoting *In re*

*Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Courts further recognize that if counsel's compensation is contingent in nature, there is no reason to accrue unnecessary or unreasonable expenses, meaning whatever expenses they do accrue were reasonable and necessary. *Mandalevy*, 2022 WL 4474263, at \*14 (finding counsel's request for reimbursement of $138,631.35 in litigation expenses reasonable because the contingent nature of counsel's compensation provided no incentive to accrue unnecessary expenses).

Lead Counsel requests that the Court grant its application for reimbursement of $67,490.63 in litigation expenses, reasonably incurred and necessary to prosecute this Action. Fee Decl. ¶8. The expenses were incurred from nine sources: 1) $16,000.00 in mediation fees, 2) $15,000.00 in investigative fees, 3) $14,916.63 in process server fees, 4) $9,346.87 in research fees, 5) $5,342.56 in travel costs, 6) $3,589.75 in expert fees, 7) $1,868.78 in meal costs, 8) $1,035.42 in filing fees, and 9) $390.62 in photocopy costs. Hopkins Decl. ¶¶96, 97. The largest fee was $16,000.00 for the services of Jed D. Melnick Esq., who conducted a mediation session with the parties leading to the Settlement of the litigation. Hopkins Decl. ¶97. Lead Counsel incurred $15,000.00 in expenses paid to private investigation services who conducted numerous fact interviews with former PLDT employees located abroad. *Id.* Lead Counsel also incurred considerable fees of $14,216.63 for process servers to locate and personally serve the Defendants abroad. *Id.*[4]

These expenses are all "of the sort ordinarily billable to paying clients." *Kmiec*, 2016 WL 5938709, at \*6.  Lead Counsel incurred these expenses while litigating this Action on a contingent-fee basis, without guarantee that they would receive reimbursement or compensation. *Amgen*, 2016 WL 10571773, at \*9 ("contingent fee basis," without guarantee of reimbursement or compensation, "counsels in favor of approving the award."). *Rentech, Inc.*, 2019 WL 5173771, at \*10 (same).

Additionally, the Notice informed potential Class Members that Lead Counsel

---

[4] For additional descriptions of expenses please see the Hopkins Declaration ¶97.

would apply for payment of litigation expenses from the Settlement Amount not to exceed $100,000. Thus, Lead Counsel's request is substantially below that disclosed in the Notice and, to date, no Class member has objected to this request for reimbursement.

Accordingly, because the expenses Lead Counsel incurred were of the sort normally reimbursed by fee-paying clients, the Court should approve its request for payment of $67,490.63 in litigation expenses from the Settlement Amount.

## IV.    LEAD PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO THE PSLRA IS REASONABLE

"[I]t is well-established that the court may grant a modest incentive award to a class representative, both as an inducement to participate in the suit and as compensation for time spent in litigation activities[.]" *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *30 (C.D. Cal. July 28, 2014); *In re OSI Sys., Inc. Deriv. Litig.*, 2017 WL 5642304, at *5 (May 2, 2017) ("Named plaintiffs…are eligible for reasonable incentive payments as part of a settlement."). In the Ninth Circuit, a $5,000 incentive award is "presumptively reasonable." *Becerra-South v. Howroyd-Wright Empl. Agency, Inc.*, 2021 WL 606245, at *5-6 (C.D. Cal. Jan. 25, 2021). When evaluating the reasonableness of an incentive award, courts consider "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions,' and the time the plaintiff spent pursing the litigation." *Id.*, quoting *Staton*, 327 F.3d at 977  (finding the requested $5,000 award to lead plaintiff reasonable because she spent 60-65 hours on her duties as class representative, produced documents, and made herself available to answer questions); *Ayala v. AT&T Mobility Servs.*, LLC, 2024 U.S. Dist. LEXIS 48470, at *15 (C.D. Cal. Mar. 18, 2024) (Aenlle-Rocha, J.) (approving $5,000 award).

Here, Lead Plaintiff is a retired internal medicine doctor who formally worked as a physician in the United States Army. Douglas Decl. ¶3. Lead Plaintiff actively participated in the Action by: (a) researching news related to PLDT and its securities; (b) participating in telephone calls and sending and receiving emails with Lead Counsel;

(c) reviewing significant filings filed in the Action; (d) reviewing Court orders; (e) consulting with Lead Counsel regarding the possibility of pursuing mediation, the overall settlement prospects and objectives, and status of the Parties' negotiations; and (f) evaluating and approving the proposed Settlement in light of all of the circumstances concerning the Action. Douglas Decl. ¶5.

For these efforts, Lead Counsel respectfully submits that Lead Plaintiff should receive an incentive award of $5,000.

## V.      CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests: (i) an award of attorneys' fees in the amount of $750,000, or 25% of the $3 million Settlement Amount, for securing this favorable result for the Class; (ii) payment of its litigation expenses in the amount of $67,490.63, which it reasonably incurred in pursuing this Action; and (iii) an award of $5,000 to Lead Plaintiff Dr. Kevin Douglas in recognition of the time and effort he spent carrying out his duties to represent the Class.

DATED: June 10, 2024                    **LEVI & KORSINSKY, LLP**

                                        _/s/ David C. Jaynes_
                                        David C. Jaynes (SBN 338917)
                                        445 South Figueroa Street, 31st Floor
                                        Los Angeles, CA  90071
                                        Tel: (213) 985-7290
                                        Email: djaynes@zlk.com

                                        Shannon L. Hopkins (admitted _pro hac vice_)
                                        Gregory M. Potrepka (admitted _pro hac vice_)
                                        1111 Summer Street, Suite 403
                                        Stamford, CT  06905
                                        Tel: (203) 992-4523
                                        Email: shopkins@zlk.com
                                        Email: gpotrepka@zlk.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Lead Counsel for Lead Plaintiff Dr. Kevin
Douglas and the Class*

1

CERTIFICATE OF COMPLIANCE

2

    I, David C. Jaynes, the undersigned counsel of record for Lead Plaintiff, hereby

3

certifies that this brief contains 6,855 words, which complies with the 7,000 word limit

4

of L.R. 11-6.1.

5

6

7

8

                    _/s/ David C. Jaynes_____
9
                    David C. Jaynes

10
                    **LEVI & KORSINSKY, LLP**
11                  445 South Figueroa Street, 31st Floor
                    Los Angeles, CA  90071
12                  Tel: (213) 985-7290
                    Email: djaynes@zlk.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28