**LEVI & KORSINSKY, LLP**
David C. Jaynes (SBN 338917)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel: (213) 985-7290
Email: djaynes@zlk.com

*Lead Counsel for Lead Plaintiff*
*Dr. Kevin Douglas and the Class*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. KEVIN DOUGLAS, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> PLDT INC., MANUEL V. PANGILINAN, ALFRED S. PANLILIO, ANNABELLE L. CHUA, MARILYN A. VICTORIO-AQUINO, MA. LOURDES C. RAUSA-CHAN, GIL SAMSON D. GARCIA, JUNE CHERYL A. CABAL-REVILLA, AND JANE BASAS, <br><br> Defendants. | Case No. 2:23-cv-00885-FLA (MAAx) <br><br> CLASS ACTION <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR APPROVAL OF DISTRIBUTION PLAN <br><br> Date: June 27, 2025 <br> Time: 1:30 p.m. <br> Judge: Hon. Fernando L. Aenlle-Rocha <br> Courtroom: 6B |

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................................1

II.     BACKGROUND ....................................................................................................2

III.    CLAIMS ADMINISTRATION ..............................................................................2

        A.    Disputed Claim ..........................................................................................3

        B.    Late Claims and Final Cut-Off ..................................................................4

IV.     DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND ................5

V.      RELEASE OF CLAIMS ........................................................................................6

VI.     CONCLUSION ......................................................................................................7

## TABLE OF AUTHORITIES

**Cases**

*Farrar et al. v. Workhorse Group, Inc. et al.,*
  Case No. 2:21-cv-02072 (C.D. Cal. Feb. 7, 2024) .......................................................7

*In re Biolase, Inc. Sec. Litig.,*
  2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)............................................................6

*In re Capstone Turbine Corp. Sec. Litig.,*
  2020 WL 7889062 (C.D. Cal. Aug. 26, 2020)............................................................7

*In re China Medicine Corp. Sec. Litig.,*
  2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ............................................................6

## I.    PRELIMINARY STATEMENT

Court-appointed Lead Plaintiff Dr. Kevin Douglas ("Lead Plaintiff") respectfully moves for entry of the [Proposed] Order Granting Motion for Approval of Distribution Plan ("Distribution Order") for the proceeds of the Settlement in the above-captioned action (the "Action"). The Distribution Plan is included in the accompanying Declaration of Margery Craig Concerning the Results of the Claims Administration Process (the "Craig Declaration"), submitted on behalf of the Court-approved Claims Administrator, Strategic Claims Services ("SCS" or the "Claims Administrator").[1]

If entered by the Court, the Distribution Order would, *inter alia*: (i) approve the administrative determinations of SCS accepting and rejecting Claims submitted in connection with the Settlement reached in the above-captioned Action as stated in the accompanying Craig Declaration; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants; (iii) direct that distribution checks state that the check must be cashed within 180 days after the date of issuance, and that Authorized Claimants will forfeit all recovery from the Settlement if they fail to cash their distribution checks in a timely manner; (iv) approve the plan for any funds remaining after the initial distribution; (v) release claims related to the administration process; and (vi) authorize the destruction of the Claim Forms and all supporting documentation at an appropriate time no less than one (1) year after the distribution of the Net Settlement Fund.

Pursuant to the terms of the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulation at ¶¶ 2.4, 2.9, 7.2. Nevertheless, Plaintiff provided Defendants' Counsel a copy of these motion papers, who informed Plaintiff on May 22, 2025 that Defendants do not oppose this Motion.

---

[1] All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Craig Declaration or in the Stipulation of Settlement dated February 16, 2024 (the "Stipulation") (ECF No. 54-7).

MEMO. OF LAW IN SUPPORT OF
MOT. FOR APPROVAL OF DISTRIBUTION PLAN
CASE NO. 2:23-cv-00885-FLA

## II.    BACKGROUND

On September 17, 2024, the Court entered the Judgement and Order Granting Motion for Final Approval of Class Action Settlement, Approval of Plan of Allocation, and Final Certification of Class (the "Final Approval Order") (ECF No. 72). The Final Approval Order approved the Settlement of this Action and the Plan of Allocation for the Net Settlement Fund. The Claims Administrator, SCS, has completed processing Claims submitted in connection with the Settlement. *See* Craig Declaration at ¶¶ 10–11. Therefore, in accordance with ¶¶ 2.6, 5.5–5.10, and 5.13 of the Stipulation, Lead Plaintiff respectfully requests that the Court enter the Distribution Order and approve the Distribution Plan so that the Net Settlement Fund may be distributed to Authorized Claimants.

In accordance with the Honorable Judge Cormac J. Carney's March 6, 2024 Order Granting Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order") (ECF No. 56), SCS mailed or e-mailed 2,406 letters to the Nominee Account Holders and Institutional Groups in SCS' matter mailing list, following which 32,492 Postcard Notices were mailed to potential Settlement Class Members by SCS or nominees, and 16,720 emails containing direct links to the Notice and Claim Form were sent to potential Settlement Class Members by SCS or nominees. *See* Craig Declaration at ¶ 5. In total, 48,609 potential Settlement Class Members were notified either by mailed Postcard Notice or email containing direct links to the Notice and Claim Form. *Id.* The Notice, and the Postcard Notice which directed potential Settlement Class Members to the Notice, informed potential Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form no later than June 25, 2024. *Id.* at ¶ 11(a).

## III.    CLAIMS ADMINISTRATION

As set forth in the Craig Declaration, on or before April 29, 2025, SCS has received and processed 23,230 Claim Forms. *Id.* at ¶ 10. All Claim Forms received

through April 29, 2025 have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation, and KCC has worked with the claimants to help them perfect their Claim Forms, including reviewing and processing additional information submitted by claimants up until May 11, 2025. *Id.*

If SCS determined a Claim to be deficient or ineligible, SCS mailed deficiency notices or communicated with claimants to advise them of the nature of their deficiency and provide them with an opportunity to cure, or advise them of SCS' determination of ineligibility. *Id.* at ¶¶ 11(b)–(c). Examples of inadequacy notices and ineligibility notices are attached as Exhibits C and F to the Craig Declaration, respectively, and lists of inadequate, Rejected Claims and Ineligible Claims are attached as Exhibits D and E to the Craig Declaration, respectively.

Of the 23,230 Claim Forms that are the subject of this Motion, SCS determined that 5,997 Claim Forms are properly documented and valid claims, as set forth in Exhibits B-1 and B-2 to the Craig Declaration, and 17,233 Claim Forms should be wholly rejected, including twelve (12) Rejected Claims who either did not respond to deficiency notices or responded with insufficient documentation, and 17,221 Ineligible Claims who have been advised of SCS' determination of ineligibility, of which only one ineligible claimant has objected to, or contested, SCS' determination. *Id.* at ¶¶ 11(a)–(c).

## A. Disputed Claim

With respect to fully processed Claim Forms, SCS received one (1) claim, Claim 49, for which the Claimant has contested SCS' determination. Claim 49 involved ADSs *sold for a profit* during the Class Period. *Id.* at ¶ 11(c)(i). Despite SCS' multiple communications with the Claimant for Claim 49, the Claimant expressed that they were not satisfied with SCS' determination, *id.*, which SCS and Lead Counsel construe to mean that the Claimant for Claim 49 is requesting Court review.

Exhibit G to the Craig Declaration contains SCS' correspondence with the disputing Claimant for Claim 49 and the reasons for SCS' rejection of Claim 49. For privacy reasons, the correspondence included in Exhibit G has been redacted to remove all personal information. SCS recommends that the disputed Claim 49 be rejected because the documentation for Claim 49 demonstrates that the Claimant's ADSs were sold for a profit, not a loss, and are thus ineligible to participate in the Settlement. *Id.; see also* Notice at p. 15 ("UNDERSTANDING YOUR PAYMENT – THE PLAN OF ALLOCATION") (ECF No. 54-9).

### B. Late Claims and Final Cut-Off

The 23,230 Claim Forms received by SCS through April 29, 2025 include twenty-seven (27) Claim Forms submitted after the June 25, 2024 deadline to file claims for the Settlement. Craig Declaration at ¶¶ 10–11(a). These Late But Otherwise Eligible Claims have been fully processed and SCS has determined that all twenty-seven (27) are, but for their late submission, otherwise properly documented and eligible to participate in the Settlement. *Id.* at ¶11(a). Although these twenty-seven Late But Otherwise Eligible Claims were submitted late, they were received while SCS was processing Timely Eligible Claims through April 29, 2025, and the processing of these Late But Otherwise Eligible Claims did not delay the completion of the Claims Administrator's process or the distribution of the Net Settlement Fund. Thus, Lead Plaintiff respectfully submits that, when the equities are balanced, it would be unfair to prevent these otherwise eligible claims from participating in the distribution of the Net Settlement Fund solely because they were received after the claim submission deadline.

In order to facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Plaintiff respectfully requests that the Court approve SCS' determination that any Claim Forms received after April 29, 2025, and any requested

adjustments to previously filed Claim Forms received after May 11, 2025, shall be barred.

### IV.    DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

#### A.    Initial Distribution of the Net Settlement Fund

Under the proposed Distribution Plan as set forth in the Craig Declaration at ¶ 13, SCS will distribute the balance of the Net Settlement Fund (less amounts to be withheld for potential tax liabilities and related fees and expenses) to Authorized Claimants in the form of distribution checks. *Id* at ¶ 13(a).

*First*, SCS will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on that Authorized Claimant's Recognized Losses as compared to the total Recognized Losses of all Authorized Claimants. *Id.*

*Second,* SCS will notify Authorized Claimants whose *pro rata* share would be a distribution of less than $10.00 that they will not receive any distribution. *Id.*

*Third*, and after eliminating Authorized Claimants who would have received less than $10.00, SCS will then recalculate the *pro rata* share of the Net Settlement Fund for remaining Authorized Claimants (*i.e.*, those who would receive $10.00 or more), and issue distribution checks to the Authorized Claimants for their *pro rata* shares. *Id.*

In order to encourage Authorized Claimants to cash their distribution checks promptly, and to avoid or reduce future expenses relating to unpaid distribution checks, Lead Counsel and SCS propose that all checks bear the notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." Similarly, Lead Counsel and SCS propose that all other checks issued in connection with subsequent distributions bear the same notation. *Id*. at ¶ 13(b).

#### B.    Additional Distribution(s) of the Net Settlement Fund

If any funds remain in the Net Settlement Fund after SCS has made reasonable and diligent efforts to have Settlement Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, but not earlier than at least six (6) months after the Initial Distribution, SCS shall, in consultation with Lead

Counsel, use the remaining funds: (i) first, to pay any amounts mistakenly omitted from the initial disbursement (if any); (ii) second, to pay any additional settlement administration fees, costs, taxes, and expenses, including those of Lead Counsel as may be approved by the Court; and (iii) finally, to make a second distribution to claimants who cashed their checks from the Initial Distribution and who would receive at least $10.00 based on their *pro rata* share of the remaining funds, after payment of the estimated costs, expenses, taxes, or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if economically feasible. *Id.* at ¶ 13(c).

If any funds remain in the Net Settlement Fund after the Initial Distribution or after a second distribution and, at which point it is determined by SCS and Lead Counsel that it is not economically feasible to conduct additional distributions to Authorized Claimants, the remaining balance shall be contributed to the *cy pres* recipient proposed by Lead Counsel, *infra*, if approved by the Court, or else to another appropriate non-profit 501(c)(3) organization, to be recommended by Lead Counsel and approved by the Court.

The *cy pres* recipient contemplated by the Stipulation at ¶ 5.9, the Investor Protection Trust, has become defunct since the Stipulation was filed. Thus, Lead Counsel respectfully requests that the Court approve a new *cy pres* recipient: Loyola University Chicago School of Law's Institute for Investor Protection (the "Institute"). The Institute has been recognized in this District as an appropriate *cy pres* recipient in securities class action settlements. *See In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015); *see also In re China Medicine Corp. Sec. Litig.*, 2014 WL 12581781, at *2 (C.D. Cal. Jan. 7, 2014).

## V.    RELEASE OF CLAIMS

In order to facilitate the full distribution of the Net Settlement Fund, it is necessary to: (i) bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants; and (ii) provide that all persons involved

in any aspect of the Claims Administrator's processing, or who are otherwise involved in the administration or taxation of the Settlement Fund or Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. *See* Stipulation at ¶ 5.12. Accordingly, Lead Plaintiff respectfully requests that the Court release and discharge all persons involved in the review, verification, calculation, or any other aspect of the processing of the Claim Forms as described in the Craig Declaration, or who were otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of such involvement, and bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claim against the Net Settlement Fund, Lead Plaintiff, Lead Counsel (also defined in the Stipulation as the Escrow Agent, *see* Stipulation at ¶ 1.13), the Claims Administrator and its agents and employees, or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement, beyond the amounts allocated to them pursuant to the terms of the Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Final Approval Order, and the Distribution Order.

Such similar releases in connection with the distribution of settlement proceeds have been repeatedly approved in this District. *See*, *e.g.*, *In re Capstone Turbine Corp. Sec. Litig.*, 2020 WL 7889062, at *2 (C.D. Cal. Aug. 26, 2020); *see also* Order Approving Distribution Plan, *Farrar et al. v. Workhorse Group, Inc. et al.,* Case No. 2:21-cv-02072 (C.D. Cal. Feb. 7, 2024), ECF No. 125.

## VI.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant his Motion for Approval of Distribution Plan and enter the [Proposed] Order Granting Motion for Approval of Distribution Plan.

DATED: May 29. 2025          **LEVI & KORSINSKY. LLP**


                             <u>/s/ David C. Jaynes</u>
                             David C. Jaynes (SBN 338917)
                             445 South Figueroa Street, 31st Floor
                             Los Angeles, CA 90071
                             Tel: (213) 985-7290
                             Email: djaynes@zlk.com


                             Shannon L. Hopkins (admitted *pro hac vice*)
                             Gregory M. Potrepka (admitted *pro hac vice*)
                             1111 Summer Street, Suite 403
                             Stamford, CT 06905
                             Tel: (203) 992-4523
                             Email: shopkins@zlk.com
                             Email: gpotrepka@zlk.com


                             *Lead Counsel for Lead Plaintiff Dr. Kevin Douglas and the Class*

<u>CERTIFICATE OF COMPLIANCE WITH</u>

I, David C. Jaynes, the undersigned counsel of record for Lead Plaintiff, hereby certify that this brief contains 2,268 words, which complies with the 7,000 word limit of L.R. 11-6.1.

<u>/s/ David C. Jaynes</u>
David C. Jaynes

**LEVI & KORSINSKY, LLP**
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel: (213) 985-7290
Email: djaynes@zlk.com