# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

DR. KEVIN DOUGLAS, Individually and on behalf of all others similarly situated,

    Plaintiff,

  v.

PLDT INC., MANUEL V. PANGILINAN, ALFRED S. PANLILIO, ANNABELLE L. CHUA, MARILYN A. VICTORIO-AQUINO, MA. LOURDES C. RAUSA-CHAN, GIL SAMSON D. GARCIA, JUNE CHERYL A. CABAL-REVILLA, AND JANE BASAS,

    Defendants.

Case No. 2:23-CV-00885-FLA-MAA

Date: June 27, 2025
Time: 1:30 p.m.
Judge: Hon. Fernando L. Aenlle-Rocha
Courtroom: 6B

## DECLARATION OF MARGERY CRAIG CONCERNING THE RESULTS OF THE CLAIMS ADMINISTRATION PROCESS

I, Margery Craig, declare:

1.    I submit this declaration in order to provide the Court and the parties involved in the above-captioned litigation with information regarding the results of the claims administration process in this matter.  I am over 21 years of age and am not a party to this action.  I have personal knowledge of the facts set forth herein.

2.    I am a Project Manager at Strategic Claims Services ("SCS"), a nationally recognized class action administration firm.  I have over seventeen years of experience specializing in the administration of class action cases.  SCS was

1

established in April 1999 and has administered over five hundred and fifty (550) class action cases since its inception.

## UDPATE ON NOTIFICATION PROCESS

4. Pursuant to the Court's Order Granting Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, dated March 6, 2024 (ECF. No. 56, the "Preliminary Approval Order"), SCS was approved as the Claims Administrator in connection with the above-captioned action.[1]

5. As noted in the Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, dated June 7, 2024 and the Supplemental Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Report on Requests for Exclusion and Objections; and (C) Claims Received to Date, dated July 29, 2024 (ECF. Nos. 65-4 and 69-1, the "Initial Mailing Declarations"), SCS mailed or e-mailed 2,406 letters to the Nominee Account Holders and Institutional Groups contained on SCS's matter mailing list. As noted in the Initial Mailing Declarations, 32,492 Postcard Notices were mailed

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation of Settlement, dated February 16, 2024 (ECF. No. 54-7, the "Stipulation") or the Memorandum of Points and Authorities in Support of Lead Plaintiff's Motion for Approval of Distribution Plan filed concurrently herewith.

to potential Class Members[2] by SCS or nominees, and 16,720 emails with the direct link to the Notice and Claim Form were sent either by SCS or nominees.  Since the Initial Mailing Declarations were filed, no additional Postcard Notices were mailed and no direct links to the Notice and Claim were emailed by SCS or nominees.  In total, 48,609[3] potential Class Members were notified either by mailed Postcard Notice or emailed direct link to the location of the Notice and Claim Form on the settlement website.

6.       The Initial Mailing Declarations noted that SCS established a webpage on its website at www.strategicclaims.net/pldt/ on March 18, 2024.  As noted in the Supplemental Declaration of Margery Craig Concerning Website Update with the New Hearing Date, date July 12, 2024 (ECF No. 67-1), on July 16, 2024, the settlement website was also updated to reflect the new hearing date of August 9, 2024, and the change to the exclusion, objection, and notice to appear dates from July 15, 2024 to July 19, 2024.  The website is accessible 24 hours a day, 7 days a week.  The website contains information related to the current status; case-related dates; and important documents.  SCS has and will continue to maintain the

---

[2] SCS received a total of five requests from potential Class Members for the Notice and Claim Form to be mailed to them.  SCS immediately mailed the Notice and Claim to the potential Class Members.

[3] There were 603 undeliverable Postcard Notices as noted in the Initial Mailing Declarations.

Settlement webpage through the distribution process.  To date, we have received 5,645 pageviews from 1,712 unique users.

7.    The Initial Mailing Declarations noted that SCS maintains a toll-free telephone number (1-866-274-4004) for Class Members to call and obtain information about the Settlement.  SCS has and will continue to promptly respond to each telephone inquiry and address Class Members' inquiries through the distribution process.

8.    SCS also sent the Depository Trust Company ("DTC") the Notice and Claim Form for the DTC to publish on the Legal Notice System ("LENS") on March 18, 2024, as stated in Initial Mailing Declarations.

9.    The Summary Notice was transmitted over on *Globe Newswire* on April 10, 2024.

## CLAIMS PROCESSING AND SCS'S DETERMINATIONS

10.    There have been 23,230 Claim Forms (hereafter referred to as "claims") submitted in connection with this settlement, representing an approximate response rate of 47.2% of the total sum of Postcard Notices and emails with the direct link to the Notice and Claim Form sent which, in SCS's experience, is within the normal range for securities class action settlements like this.[4]  SCS has carefully reviewed,

---

[4] SCS has not processed any new claims filed after April 29, 2025, or any additional information received or submitted after May 11, 2025, due to extreme lateness and because their inclusion would have delayed the finalization of the administration.

analyzed, and processed all of these claims and has responded to all claimant inquiries regarding the action, the settlement and the procedures for filling out the Claim Forms. SCS has also been in close contact with Lead Counsel to review the administration process. SCS's Report of Claims Administrator is attached hereto as **Exhibit A** and described below.

11.     The attached Report of Claims Administrator sets forth the final status of claims submitted to SCS as follows:

(a)     <u>PROPERLY DOCUMENTED CLAIMS</u>:     SCS has identified 5,997 properly documented valid claims representing an approximate rate of valid claims of 25.8% which, in SCS' experience, is within the normal range for securities class action settlements. Out of the 5,997 properly documented, valid claims, 5,970 were submitted timely, and 27 were submitted after the June 25, 2024 deadline to file claims for the Settlement and on or before April 29, 2025. These valid claims were calculated in the manner set forth in the Court-approved Plan of Allocation, included in the Notice. Attached as **Exhibit B-1** is a spreadsheet of the 5,970 properly documented and timely submitted claims (the "Timely Eligible Claims") and **Exhibit B-2** is a spreadsheet of the 27 late, but otherwise properly documented claims (the "Late But Otherwise Eligible Claims").

(b)    INADEQUATELY DOCUMENTED CLAIMS:  SCS initially identified 13 inadequately documented claims. SCS mailed deficiency notices to each of these claimants, advising them of the nature of their deficiency and providing them an opportunity to cure.  A sample inadequacy notice is attached hereto as **Exhibit C**.  Among these 13 deficient claims, one has been successfully cured and is considered valid.  The remaining 12 inadequate claimants (representing "Rejected Claims") either did not respond to the deficiency notice or responded with insufficient documentation and were sent a rejection notice setting forth the reason for their deficiency.  To date, none of the 12 deficient claimants has objected to or contested this determination. See **Exhibit D** for a list of the inadequate, Rejected Claims.

(c)    INELIGIBLE CLAIMS:  In addition to the 12 claims discussed above in paragraph b, SCS has identified 17,221 claims which we recommend for complete rejection (the "Ineligible Claims").  Included in this category are: (i) claims with no Recognized Losses; (ii) claims filed for American Depository Shares ("ADSs") purchased outside of the Class Period; (iii) claims filed for ADSs that were received or transferred into an account, but not purchased;  (iv) claims with ADSs sold short; (v) claims withdrawn from the filing entity;  (vi) duplicate claims were filed; (vii) claims filed for securities other than PLDT Inc. ("PLDT") ADSs; and (viii) fraudulent claim

was filed.  See **Exhibit E** for a list of these Ineligible Claims.  We have communicated with these 17,221 claimants and advised them of our determination.  A sample ineligibility notice is attached hereto as **Exhibit F**. To date, only one of the 17,221 ineligible claimants has objected to, or contested SCS's determination.

(i)　　　Claim 49: The Claimant initially submitted a claim stating that 500 ADSs were purchased prior to Class Period.  The claimant included a screen shot of the current value of their ADSs with their online claim form.  On December 4, 2024, SCS notified the Claimant via mail that the claim was ineligible for PLDT ADSs not being purchased in the Class Period (January 1, 2019 through and including December 21, 2022).  On January 24, 2025, the Claimant emailed SCS requesting a review of the claim.  SCS emailed the Claimant on February 3, 2025 advising that the claim was reviewed again and it remains ineligible based on the information provided with the original claim form.  The Claimant responded on February 3, 2025 with trade confirmations for 245 PLDT ADSs that were purchased on November 23, 2020 for $28.6126 per ADS with a gross purchase price of $7,010.08 and were sold on October 13, 2021 for $31.7786 per ADS for a gross

sale price of $7,785.75.  On February 4, 2025, SCS processed the new documentation that was received and emailed the Claimant advising that the 245 ADSs were sold for a profit and, thus, are not eligible to participate in the settlement.  SCS also advised the Claimant they would receive a mailed letter confirming their ineligibility.  On February 4, 2025 the Claimant emailed SCS stating they would like to appeal the decision.  On February 25, 2025, SCS mailed the Claimant a Notice of Ineligibility letter to advise them that 245 ADSs were sold for a profit have no recognized loss.  The Claimant then emailed SCS on March 14, 2025 stating that they would like to appeal the decision.  On April 7, 2025, SCS contacted the Claimant via phone and explained the determination that the ADSs were sold for a profit during the Class Period.  Once the call was completed, the Claimant again emailed SCS stating they were not satisfied with the determination. **Exhibit G** contains copies of the claim form and the correspondence between SCS and the Claimant, which has been redacted to remove personal information.  SCS respectfully requests that pursuant to the Court-approved Plan of Allocation, the Court agree with SCS's determination that Claim 49 remains

ineligible to participate in the settlement because Claim 49 profited on their purchase and sale of the 245 ADSs of PLDT during the Class Period.

12.   In anticipation of completing this administration, SCS respectfully requests that the Court reject as untimely any claims received after April 29, 2025, and any responses to deficiency and/or rejection notices received after May 11, 2025.

13.   Should the Court concur with SCS's administrative determinations concerning the claims recommended for acceptance and rejection, SCS recommends the following distribution plan (the "Distribution Plan"):

(a)   Per the Plan of Allocation, each Authorized Claimant shall receive a *pro rata* share of the Net Settlement Fund, based on that Authorized Claimant's Recognized Losses as compared to the total Recognized Losses of the 5,970 Authorized Claimants (plus the 27 late Authorized Claimants if those claims are deemed valid by the Court).  The balance of the Net Settlement Fund (less amounts to be withheld for potential tax liabilities and related fees and expenses) shall be distributed to Authorized Claimants in the form of distribution checks (*i.e.,* the "Initial Distribution"). No distribution will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.

(b)    In order to encourage Authorized Claimants to cash their distribution checks promptly, and to avoid or reduce future expenses relating to unpaid distribution checks, all checks should bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." Similarly, all other checks issued in connection with subsequent distributions shall bear the same notation.

(c)    If any funds remain in the Net Settlement Fund by reason of uncashed distribution checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund after at least six (6) months after the Initial Distribution of such funds will be used in the following fashion: (i) first, to pay any amounts mistakenly omitted from the initial disbursement (if any); (ii) second, to pay any additional settlement administration fees, costs, taxes, and expenses, including those of Lead Counsel as may be approved by the Court; and (iii) finally, to make a second distribution to claimants who cashed their checks from the Initial Distribution and who would receive at least $10.00 based on their *pro rata* share of the remaining funds, after payment of the estimated costs, expenses, taxes, or fees to be incurred in administering the Net

Settlement Fund and in making this second distribution, if such second distribution is economically feasible. At such time it is determined that redistribution of funds remaining in the Settlement Fund is not cost-effective, the remaining balance shall be contributed to Loyola University Chicago School of Law's Institute for Investor Protection, if approved by the Court, or else to another appropriate non-profit 501(c)(3) organization, to be recommended by Lead Counsel and approved by the Court.

(d)    Authorized Claimants who do not cash their distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement unless good cause is shown. The funds allocated to all such stale-dated checks will be available for re-distribution to other Authorized Claimants in subsequent distributions, if such distributions are determined to be economically feasible.

(e)    SCS respectfully requests the Court order that: All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members and other Claimants, whether or not they are to receive payment from the Net Settlement Fund, are barred

11

from making any further claim against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator and its agents/employees, the Escrow Agent, or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement, beyond the amounts allocated to them pursuant to the terms of the Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Final Approval Order, and the Distribution Order.

(f)    SCS respectfully requests the Court order that: (i) in no less than one (1) year after all funds have been distributed, SCS may destroy the paper copies of the Claim Forms and all supporting documentation; and (ii) in no less than one (1) year after all funds have been distributed, SCS may destroy the electronic copies of the Claim Forms and all supporting documentation. This is the customary document retention period SCS uses to prevent additional costs to the Settlement Class for storage expenses and related fees.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 20th day of May 2025 in Media, Pennsylvania.

Margery Craig