UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE FERNANDO L. AENLLE-ROCHA

UNITED STATES DISTRICT JUDGE PRESIDING

- - -

SOPHIA OLSSON,                          )
                        PLAINTIFF,      )
                                        )
VS.                                     )   NO. CV 23-00885 FLA
                                        )
PLDT, INC., ET AL.,                     )
                        DEFENDANT,      )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

FRIDAY, AUGUST 9, 2024

_____
KATIE E. THIBODEAUX, CSR 9858
U.S. OFFICIAL COURT REPORTER
SUITE 4311
350 WEST 1ST STREET
LOS ANGELES, CA  90012

APPEARANCES OF COUNSEL:


FOR PLAINTIFF:

    LEVI & KORSINSKY
    BY:  GREGORY POTREPKA
    -AND- DAVID JANES
    1111 SUMMER STREET
    SUITE 403
    STAMFORD, CT 06905


FOR DEFENDANT::

    MILBANK LLP
    BY:  MARK VILLAVERDE
    2029 CENTURY PARK EAST
    THIRTY-THIRD FLOOR
    LOS ANGELES, CA  90067

LOS ANGELES, CALIFORNIA; FRIDAY, AUGUST 9, 2024

1:35 P.M.

- - - - -

THE CLERK: CALLING LA CV 23-00885, SOPHIA OLSSON V. PLDT, INC., ET AL.

COUNSEL, PLEASE MAKE YOUR APPEARANCES BEGINNING WITH THE PLAINTIFF.

MR. POTREPKA: GOOD AFTERNOON, YOUR HONOR. GREGORY POTREPKA BEHALF OF PLAINTIFFS FROM LEVI AND KORSINSKY.

MR. JANES: GOOD AFTERNOON, YOUR HONOR. DAVID JANES FOR THE PLAINTIFFS FOR LEVI AND KORSINSKY.

MR. VILLAVERDE: GOOD AFTERNOON, YOUR HONOR. MARK VILLAVERDE, MILBANK LLP, ON BEHALF OF THE SETTLING DEFENDANTS, PLDT INC., MANUEL PANGILILAN, ALFRED PANLILIO AND MARILYN VICTORIO-AQUINO.

THE COURT: ALL RIGHT. GOOD AFTERNOON, EVERYONE. SO WE ARE HERE TODAY FOR HEARING ON THE MOTION TO APPROVE THE SETTLEMENT IN THIS CLASS ACTION CASE.

SO THE PLAINTIFF HAS FILED PAPERS. I HAVE REVIEWED THEM. LET ME HEAR FROM PLAINTIFF'S COUNSEL.

I KNOW THERE IS EXTENSIVE BRIEFING, BUT WHY DON'T YOU JUST TELL ME WHY YOU BELIEVE THAT THE SETTLEMENT COMPORTS WITH RULE 23(B)(2) AND THE RODRIGUEZ FACTORS THAT YOU SET OUT IN YOUR BRIEF. AND IF YOU WANT TO USE THE POWERPOINT THAT YOU FILED, YOU MAY.

MR. JANES: SURE, YOUR HONOR. I HAVE A COPY OF THAT EXHIBIT FOR YOU IF YOU WOULD LIKE THAT, OR, IF YOU HAVE IT ON YOUR COMPUTER, THAT IS FINE TOO.

THE COURT: I DON'T THINK I ACTUALLY HAVE IT. I AM SURE I CAN TRACK IT DOWN HERE.

MR. JANES: I DO HAVE A COPY FOR YOU.

THE COURT: YES. WHY DON'T YOU HAND THAT UP TO MY COURTROOM DEPUTY, PLEASE.

MR. JANES: GOOD AFTERNOON, YOUR HONOR. ON BEHALF OF THE PLAINTIFFS WE ARE HERE TODAY MOVING FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES AND APPROVAL OF THE PLAN OF ALLOCATION.

YOUR HONOR HAS EXPRESSED THE DESIRE TO HEAR WHY WE BELIEVE THIS SETTLEMENT IS FAIR UNDER THE RULES, ADEQUATE AND REASONABLE, AND WHY IT COMPLIES WITH THE RULES. I WILL BEGIN WITH A LITTLE BIT OF BACKGROUND ON THIS CASE. LEAD PLAINTIFF WAS APPOINTED IN APRIL OF 2023 AS LEAD PLAINTIFF, AND HE IMMEDIATELY BEGAN A DILIGENT FACTUAL INVESTIGATION INTO THE FACTS OF THIS CASE.

HIS DILIGENT INVESTIGATION RESULTED IN A ROBUST, 204-PAGE AMENDED COMPLAINT. IT WAS THE RESULT OF HIRING INVESTIGATIVE COUNSEL TO INTERVIEW PLDT FORMER EMPLOYEES IN THE PHILLIPINES. IT INCLUDED CAREFUL REVIEW OF THOUSANDS OF PAGES OF SEC FILINGS AND OTHER PUBLIC DISCLOSURES AND CONSULTATION WITH DAMAGES AND LOSS CAUSATION EXPERTS.

THE RULES -- THE RULE FOR -- IN ORDER FOR THE

COURT TO APPROVE CLASS ACTION SETTLEMENT, THE COURT MUST HOLD A HEARING AND UNDER RULE 23(B) FIND THAT THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND THE COURT EVALUATES THAT UNDER A NUMBER OF FACTORS.

THE FIRST FACTOR THAT THE COURT IS GOING TO LOOK AT IS WHETHER OR NOT THE CLASS REPRESENTATIVES AND CLASS COUNSEL HAVE ADEQUATELY REPRESENTED THE CLASS.

AS I WAS BEGINNING TO STATE BEFORE, LEAD PLAINTIFF DILIGENTLY RESEARCHED THIS CASE.  HE HAS BEEN ATTENTIVE TO THIS CASE AND REVIEWED ALL OF THE RELEVANT FILINGS.  HE HAS, AS JUDGE CARNEY, THE HONORABLE JUDGE CARNEY, FOUND IN HIS ORDER PRELIMINARILY APPROVING THE SETTLEMENT, THERE ARE NO CONFLICTS OF INTEREST BETWEEN THE LEAD PLAINTIFF AND THE CLASS.

AS FOR THE ADEQUACY OF THEIR REPRESENTATION OF THE COUNSEL, LEVI AND KORSINSKY IS A VERY EXPERIENCED FIRM IN LITIGATING SECURITIES CLASS ACTIONS SUCH AS THIS, AND THEIR EFFORTS HAVE BEEN DILIGENT IN EVERY WAY.

ACCORDING TO JUDGE CARNEY, THE DOCKET AT 56, HE NOTED THAT THERE IS NO EVIDENCE OF A CONFLICT OF INTEREST BETWEEN LEAD PLAINTIFF AND THE CLASS.  HIS CLAIMS ARE IDENTICAL TO THOSE OF THE OTHER CLASS MEMBERS, AND HE HAS EVERY INCENTIVE TO VIGOROUSLY PURSUE THOSE CLAIMS NOR IS THERE ANY EVIDENCE THAT COUNSEL WHO ARE ACTIVE PRACTITIONERS EXPERIENCED IN COMPLEX SECURITIES LITIGATION WILL NOT ADEQUATELY REPRESENT THE CLASS OR PROTECT THE INTERESTS OF THE CLASS.

THE COURT:  THAT IS A PRELIMINARY FINDING.  SO WHY

DON'T YOU TELL ME WHY THE LEAD PLAINTIFF IS ADEQUATELY REPRESENTING THE CLASS AND HOW HIS INTERESTS ALIGN WITH THE CLASS, YOU KNOW, INCLUDING THE INFORMATION THAT YOU HAVE PROVIDED, THE SIZE OF THE CLASS.  IT IS A SIGNIFICANTLY, YOU KNOW, 48,000-PLUS CLASS MEMBERS.  HOW DOES YOUR LEAD PLAINTIFF FIT INTO THAT.  WHY IS HE A GOOD REPRESENTATIVE REGARDLESS OF WHAT JUDGE CARNEY DID IN A PRELIMINARY ORDER.

MR. JANES:  YES.

HE IS ADEQUATE BECAUSE THE SETTLEMENT THAT THE LEAD PLAINTIFF CAME TO WITH THE DEFENDANTS WAS NEGOTIATED AT ARM'S LENGTH.  IT WAS DONE WITH A NEUTRAL THIRD PARTY MEDIATOR.  THE LEAD PLAINTIFF, HIS INTEREST IS IN MAXIMIZING RECOVERY FOR HIMSELF AND THE CLASS, AND THAT WILL BE DISTRIBUTED ON A PRO RATA BASIS ACCORDING TO THE RECOGNIZED LOSSES OF THE CLASS.

THE COURT:  AND YOU TOLD ME SOME ABOUT THE NATURE OF THE ACTION -- RIGHT -- WHAT THE ALLEGED DAMAGES WERE TO THE CLASS MEMBERS, HOW THEY SUSTAINED.  SO WHY DON'T YOU TALK A LITTLE BIT ABOUT THAT AND HOW THE LEAD PLAINTIFF IS REPRESENTATIVE OF THE OTHER CLASS MEMBERS. I THINK THIS TURNS ON SHARES PURCHASED AT A CERTAIN TIME OR BEFORE A CERTAIN TIME.

MR. JANES:  YES, YOUR HONOR.

EVERY MEMBER OF THE PROPOSED CLASS IS A PURCHASER OF SHARES OF PLDT OR AMERICAN REPOSITORY SHARES, ADSS.  SO EVERY ONE OF THE CLASS MEMBERS IS IN THE SAME SITUATION AS THE LEAD PLAINTIFF WHO PURCHASED

SHARES WHILE THE SHARES WERE TRADING AT AN ARTIFICIALLY INFLATED PRICE.

AND WHEN THE MARKET WAS CORRECTED WITH NEW INFORMATION, LEAD PLAINTIFF AS WELL AS THE OTHER CLASS MEMBERS, THEY SUFFERED DAMAGE WHEN THE ARTIFICIAL INFLATION CAME OUT OF THAT THE PRICE OF THE ADSS.

THE COURT:  AND WHAT CAUSED THAT?  WHAT CAUSED THE STOCK PRICE TO BE OVERINFLATED?

MR. JANES:  YES.  SO THE FALSE AND MISLEADING STATEMENTS ALLEGED IN THE COMPLAINT THAT WERE ALLEGEDLY MADE BY THE DEFENDANTS RELATED TO THE COMPANY'S INTERNAL CONTROLS OF FINANCIAL REPORTING AND THEY RELATED TO THE COMPANY'S FINANCIAL POSITION, HOW MUCH THEY HAD BEEN SPENDING ON CAPITAL EXPENDITURES OVER A NUMBER OF YEARS, AND SO WHEN THE TRUTH THAT THEY HAD MISREPRESENTED THE AMOUNT OF SPENDING ON CAPITAL EXPENDITURES OVER THE YEARS AS WELL AS THEIR LACK OF PROGRESS --

THE COURT:  UNDERSTATED IT.

MR. JANES:  YES.  THEY UNDERSTATED IT.  SO THEY HAD INCURRED ALMOST A BILLION US DOLLARS MORE IN SPENDING THAN THEY HAD TOLD THE INVESTORS ABOUT.

THE COURT:  SHAREHOLDERS.

MR. JANES:  CORRECT.

THE SECOND FACTOR THAT THE COURT WOULD LIKE TO UNDERSTAND IS THAT THIS SETTLEMENT WAS THE RESULT OF GOOD FAITH ARM'S LENGTH NEGOTIATION.  SO WHILE THE LEAD PLAINTIFF PUT TOGETHER A ROBUST COMPLAINT, THE DEFENDANTS FILED A MOTION TO DISMISS THAT COMPLAINT, AND THEY

CHALLENGED NEARLY EVERY ELEMENT OF THE PLAINTIFF'S CLAIMS.

WHILE THE LEAD PLAINTIFF WAS PUTTING TOGETHER AN OPPOSITION TO THIS MOTION TO DISMISS, THE PARTIES AGREED TO MEDIATE THIS CASE.  THEY WENT TO ONE OF THE MOST WELL-RESPECTED ALTERNATIVE DISPUTE RESOLUTION PROVIDERS, JAMS, AND THEY OBTAINED A THIRD PARTY NEUTRAL MEDIATOR, MR. JED MELNICK, WHO HAS NEARLY 20 YEARS OF EXPERIENCE MEDIATING COMPLEX CASES.

HE HAS DONE NEARLY A THOUSAND CASES OF SIMILAR NATURE, AND, AT THAT MEDIATION -- WELL, PRIOR TO THAT MEDIATION, THE PARTIES SUBMITTED -- THEY EXCHANGED MEDIATION BRIEFS THAT WERE -- THAT GAVE THE PARTIES THE OPPORTUNITY TO TEST THE CLAIMS AND DEFENSES.  AND, AT THAT MEDIATION, THERE WAS A VIGOROUS ADVOCACY FOR THE CLAIMS AND DEFENSES OF THE RESPECTIVE PARTIES.  WITH THE ASSISTANCE OF THIS THIRD PARTY MEDIATOR, THE PARTIES CAME TO THE CONCLUSION THAT IT WAS IN THE BEST INTEREST OF EVERYONE TO SETTLE THE ACTION FOR $3 MILLION OF CASH.

SO AS WAS NOTED IN JUDGE CARNEY'S PRELIMINARY ORDER, THERE HAVE BEEN NO SIGNS OF COLLUSION IN THIS CASE, AND ALL OF THE FACTS WEIGH TOWARD FINDING THAT THIS WAS AN ARM'S LENGTH, GOOD FAITH NEGOTIATION.

ADDITIONALLY, THE RELIEF THAT THE LEAD PLAINTIFF OBTAINED IN THIS MEDIATION IS CONSIDERABLE CONSIDERING THE FACTS OF THIS CASE, AND THE LEAD PLAINTIFF IN CONSULTATION WITH DAMAGE EXPERTS HAS ESTIMATED THAT THE MAXIMUM ACHIEVABLE DAMAGES THAT COULD

BE ACHIEVED WITH A SUCCESSFUL VERDICT ON ALL CLAIMS AT TRIAL WOULD BE AT MOST $19.5 MILLION.  THIS SETTLEMENT FOR $3 MILLION IS 15.4 PERCENT OF THAT.

15.4 PERCENT, AS JUDGE CARNEY NOTED, WAS, QUOTE, AN EXCEPTIONAL RESULT FOR THE CLASS, AND, AS NOTED, THERE ARE OTHER CASES IN THIS JURISDICTION WHERE COURTS HAVE APPROVED MUCH LOWER PERCENTAGES OF TOTAL DAMAGES.

THE COURT:  AND THE SETTLEMENT HAS BEEN REACHED FAIRLY EARLY; RIGHT?

MR. JANES:  THAT'S CORRECT.  SO EXHIBIT 11 THAT I HAVE PASSED UP TO THE COURT NOTES THE DANGERS, THE RISKS AND THE COMPLEXITY OF MOVING FORWARD IN THIS CASE.  SO IN THIS CASE WE HAD NOT EVEN MOVED PAST THE MOTION TO DISMISS, AND SO THERE WAS A CONSIDERABLE AMOUNT OF RISK IN CONTINUING TO LITIGATE THIS CASE FOR THE PLAINTIFF AND THE CLASS.

IN A SECURITIES ACTION LIKE THIS, A MOTION TO DISMISS CAN BE A DIFFICULT THING TO OVERCOME BECAUSE OF THE HEIGHTENED PLEADING STANDARD OF THE PSLRA.  MANY TIMES IT IS VERY DIFFICULT TO PROVE OR TO EVEN ADEQUATELY ALLEGE THAT THE DEFENDANTS ACTED WITH SCIENTER WHEN WE DON'T HAVE THE BENEFIT OF ANY DISCOVERY ESPECIALLY WHEN THE ACTIONS WERE IN A FOREIGN COUNTRY.  SO THE MOTION TO DISMISS POSED A REAL AND SIGNIFICANT RISK TO THE PLAINTIFF AND THE CLASS HERE.

A VERY, VERY BIG RISK IN THIS CASE IS EVEN IF THE CASE WERE TO SURVIVE A MOTION TO DISMISS, WE WOULD

HAVE TO GO THROUGH FOREIGN DISCOVERY.  SO THE REPUBLIC OF THE PHILLIPINES IS NOT PARTY TO THE CONVENTION OF THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS MAKING DISCOVERY IN THIS CASE VERY UNCERTAIN.

IN ADDITION, THE DOCUMENTARY EVIDENCE MAY HAVE BEEN IN A FOREIGN LANGUAGE COMPLICATING THINGS AND MAKING THINGS MORE EXPENSIVE.  TESTIMONIAL EVIDENCE MAY HAVE BEEN IN A FOREIGN LANGUAGE, AND JUST THE PROCEDURE FOR PRESERVING EVIDENCE AND OBTAINING EVIDENCE MAY HAVE BEEN VERY, VERY DIFFICULT IN THIS CASE.

THE COURT:  SO MOST OF THE EVIDENCE WOULD HAVE BEEN IN THE PHILLIPINES?

MR. JANES:  THAT'S CORRECT, YOUR HONOR.

CLASS CERTIFICATION IS ALSO A VERY BIG RISK IN A CASE LIKE THIS.  EVEN IF THE -- THE DEFENDANTS SURELY WOULD HAVE OPPOSED CLASS CERTIFICATION AS THEY ALWAYS DO, AND, EVEN IF A CLASS HAD BEEN CERTIFIED, THERE IS ALWAYS A RISK IN CASES LIKE THIS THAT IT CAN BE DECERTIFIED.

CASES LIKE THIS, YOUR HONOR, ARE ALSO VERY COMPLEX.  IN THIS CASE THERE WAS A LOT OF ACCOUNTING ISSUES, AND IT WOULD HAVE REQUIRED THE PLAINTIFFS TO HIRE EXPERTS AND CONSULTANTS TO CREATE THE EVIDENCE NEEDED TO TAKE THIS TO SUMMARY JUDGMENT OR TRIAL.  AND, AGAIN, BEING SO EARLY IN THE CASE, THERE IS A HUGE AMOUNT OF DELAY, TIME, EXPENSE AND RISK THAT WOULD GO INTO CONTINUING TO LITIGATE THIS CASE.  SO THESE WERE FACTORS THAT WERE CONSIDERED AT THE MEDIATION WHEN DISCUSSING WITH MR. JED MELNICK THE ADEQUACY OF THIS SETTLEMENT OF

$3 MILLION.

THE COURT:  WHAT DOES EACH CLASS MEMBER STAND TO GAIN FROM THE SETTLEMENT?

MR. JANES:  YOUR HONOR, ON A GROSS BASIS, THE CLAIMS ADMINISTRATOR HAD CALCULATED THAT TO BE 58-CENTS PER ADS, AND NET OF EXPENSES, THAT WOULD BE 42.  AND THAT IS ASSUMING THAT EVERY VALID CLAIM AND RECOGNIZED LOSS WAS OBTAINED.

THE COURT:  DID HE HAVE A SENSE OF -- I DON'T KNOW HOW MANY SHARES YOUR CLASS MEMBERS -- I AM SURE IT VARIES, BUT DO YOU HAVE A RANGE, A SENSE OF WHAT THE RECOVERY WILL BE FOR CLASS MEMBERS RANGING FROM A TO, WHAT, TO Z?

MR. JANES:  YES, YOUR HONOR.

I DON'T HAVE AN EXACT RANGE, BUT WHAT I CAN TELL YOU IS AS OF THIS MORNING WHEN WE CONTACTED THE CLAIMS ADMINISTRATOR, THERE HAD BEEN OVER 23,000 CLAIM FORMS RETURNED.  OVER 6,000 OF THOSE WERE DEEMED TO BE VALID CLAIMS, AND THOSE VALID CLAIMS REPRESENTED ABOUT -- ALMOST 4 MILLION SHARES.

AND THE ESTIMATED TOTAL DAMAGED SHARES IN THIS CASE WAS 5.2 MILLION SO APPROXIMATELY 75 PERCENT OF THE DAMAGED SHARES HAVE RESPONDED WITH VALID CLAIM FORMS TO THE CLAIMS ADMINISTRATOR IN THIS CASE.

THE COURT:  IT IS ABOUT 6,000 SHAREHOLDERS?  IS THAT WHAT I HEARD YOU SAY?

MR. JANES:  YES, YOUR HONOR.  AND YOUR HONOR, THAT --,

THE COURT:  DO YOU KNOW ABOUT HOW MANY SHARES THOSE -- I MEAN 4 MILLION SHARES, 6,000 SHAREHOLDERS, AND WHEN YOU SAY THEY HAVE BEEN DEEMED VALID, PURCHASED SHARES ON OR BEFORE THE ACTS THAT ARE ALLEGED?

MR. JANES:  AND LIKE I SAID THERE WAS A LOT MORE THAT WERE NOT VALID.  THERE WAS A TOTAL OF MORE THAN 23,000 CLAIM FORMS SUBMITTED, BUT THEY HAD BEEN DEEMED TO NOT BE CLASS MEMBERS.

THE COURT:  OKAY.

MR. JANES:  OTHER FACTORS THAT UNDER RODRIGUEZ THAT THE COURT IS GOING TO CONSIDER IS THE REACTION OF THE CLASS.  IN THIS CASE, THE REACTION OF THE CLASS HAS BEEN OVERWHELMINGLY POSITIVE.  OF THOSE MORE THAN 6,000 VALID CLAIMS THAT HAVE BEEN SUBMITTED, THERE HAS ONLY BEEN TWO INDIVIDUALS WHO OPTED FOR EXCLUSION FROM THE CLASS WHICH IS A REMARKABLY LOW NUMBER OF INDIVIDUALS CONSIDERING THAT THE NOTICE HAS GONE OUT AND HAS REACHED THESE SHAREHOLDERS.

THERE HAS ALSO ONLY BEEN ONE OBJECTION, AND IT WASN'T TO THE FAIRNESS, REASONABLENESS OR ADEQUACY OF THE SETTLEMENT.  IT WAS TAKING ISSUE WITH THE PLAN OF ALLOCATION AND THE MINIMUM CLAIM THRESHOLD.

THE LEAD PLAINTIFF WOULD ASK THE COURT TO OVERRULE THAT OBJECTION.  THERE IS SEVERAL REASONS WE THINK IT IS PROCEDURALLY IMPROPER.  FIRST OF ALL, THE OBJECTION ITSELF DOES NOT PROVIDE ANY EVIDENCE THAT THIS PERSON IS AN ACTUAL CLASS MEMBER.  IT MERELY ASSERTS THAT THEY MADE PURCHASES DURING THE CLASS PERIOD.

IT DOESN'T SAY WHEN THE PERSON, WHEN THIS MR. MATTHEW MINOR SOLD THESE SHARES.  SO IF HE HAD SOLD THEM FOR A GAIN WITHIN THE 90-DAY PERIOD AFTER, THEN HE WOULD NOT BE A CLASS MEMBER.  SO PROCEDURALLY THIS OBJECTION SHOULD BE OVERRULED.

BUT ALSO ON THE SUBSTANCE OF THIS, AS YOU HAVE SEEN IN THE BRIEFING, COURTS REGULARLY HOLD THAT A $10 DE MINIMUS CLAIM AMOUNT IS REASONABLE IN A PLAN OF ALLOCATION, AND SOME COURTS HAVE EVEN HELD THAT $20 IS AN ACCEPTABLE EXCLUSION.

YOUR HONOR, THERE HAS BEEN NO PARALLEL INVESTIGATION OR LITIGATION IN THIS CASE TO BE CONSIDERED SO THAT FACTOR DOESN'T WEIGH IN FAVOR OR AGAINST FINDING THIS TO BE FAIR, REASONABLE AND ADEQUATE.

THE EFFECTIVENESS OF THE PROPOSED METHOD OF DISTRIBUTION IS A FACTOR THAT THE COURT WILL CONTINUE. THE METHOD OF DISTRIBUTION IN THIS CASE IS STANDARD AND WELL ESTABLISHED, AND WE HAVE SELECTED A CLAIMS ADMINISTRATOR WHO HAS DECADES OF EXPERIENCE AND HAS ADMINISTERED MANY, MANY THOUSANDS OF CASES.

JUDGE CARNEY, IN HIS PRELIMINARY APPROVAL ORDER, FOUND THAT THE METHOD OF DISTRIBUTION IN THIS CASE WAS STRAIGHTFORWARD AND NOT UNDULY DEMANDING, AND I THINK THAT IS EVIDENCED BY THE NUMBER OF CLAIM FORMS THAT THE ADMINISTRATOR HAS RECEIVED, AN EXCEPTIONALLY LARGE AMOUNT OF CLAIM FORMS, AND AN EXCEPTIONALLY LARGE AMOUNT OF TOTAL DAMAGED SHARES HAVE BEEN INCLUDED IN THAT.

YOUR HONOR, THIS PROPOSED SETTLEMENT DOES NOT

GRANT PREFERENTIAL TREATMENT TO CLASS REPRESENTATIVES OR OTHER SEGMENTS OF THE CLASS.  IT IS CUSTOMARY IN TERMS IT TREATS ALL CLASS MEMBERS EQUITABLY RELATIVE TO EACH OTHER.  THE CLASS MEMBERS RECEIVE A PRO RATA RECOVERY FEE BASED UPON THE SAME FORMULA.  THERE IS NO POSSIBILITY OF REVERSION IN THIS PLAN OF ALLOCATION.

ARE THERE ANY OTHER FACTORS THAT YOUR HONOR IS CONCERNED WITH OR WOULD LIKE TO BE DISCUSSED?

THE COURT:  WELL, TELL ME WHY THE PROPOSED AWARD OF ATTORNEY'S FEES AND COSTS IS REASONABLE.

MR. JANES:  SURE, YOUR HONOR.  MR. GREG POTREPKA IS GOING TO HANDLE THAT.

THE COURT:  ALL RIGHT.  VERY WELL.

MR. POTREPKA:  GOOD AFTERNOON, YOUR HONOR.

THE COURT:  GOOD AFTERNOON.  I FAILED TO ASK.

WITH RESPECT TO THE ONE OBJECTOR AND THE TWO REQUESTS FOR EXCLUSIONS, DID EITHER OF THOSE, DID ANY OF THOSE INDIVIDUALS APPEAR TODAY IN COURT?

MR. POTREPKA:  NO, YOUR HONOR, AND IT DOES NOT APPEAR THAT THERE IS ANYONE OTHER THAN COUNSEL FOR THIS CASE AND YOUR -- THE CASE ON YOUR HONOR'S CALENDAR NEXT. WE ALSO DID NOT SEE ANY SHAREHOLDERS IN THE HALLWAY OR OUTSIDE THE COURTROOM TODAY.

THE COURT:  AND YOU TOLD ME THAT YOU WEREN'T SURE THAT MR. MINOR WAS A MEMBER OF THE CLASS.  WITH RESPECT TO THOSE THAT HAVE ASKED TO OPT OUT, DO YOU KNOW WHETHER THEY HAVE VALID CLAIMS?

MR. POTREPKA:  YOUR HONOR, NONE OF THE -- NEITHER

OF THE TWO OPT OUTS SUBMITTED DOCUMENTATION SO FOR THE SAME REASONS THAT MR. JANES DESCRIBED WITH RESPECT TO MR. MINOR, IT IS POSSIBLE THAT THESE WERE NOT CLASS MEMBERS.

IF AN INDIVIDUAL PURCHASES DURING THE CLASS PERIOD AND THEN SELLS AT A PROFIT DURING THE 90-DAY LOOK BACK PERIOD, THEY WOULD NOT BE DAMAGED BY THOSE PURCHASES SO THEY WOULD NOT BE A CLASS MEMBER.  SIMILARLY, IF AN INDIVIDUAL WAS PURCHASING SHARES DURING THE CLASS PERIOD TO COVER A SHORT SALE, FOR EXAMPLE, THEY WOULD NOT BE ENTITLED TO RECOVER.  SO WE ARE NOT CERTAIN.

WHAT I DO BELIEVE IS THAT THERE WAS ONE INDIVIDUAL WHO -- WHO PURCHASED AND SOLD BEFORE THE CORRECTIVE DISCLOSURE AND SO WAS NOT A CLASS MEMBER, BUT, FOR THE OTHER INDIVIDUAL, I THINK WE ARE JUST NOT SURE, YOUR HONOR.

AND SO I WOULD LIKE TO PRESENT AS TO OUR REQUEST FOR ATTORNEY'S FEES AS WELL AS REIMBURSEMENT OF OUR LITIGATION EXPENSES AS WELL AS A REQUEST BY OUR LEAD PLAINTIFF FOR AN INCENTIVE AWARD OF $5,000 IN PAYMENT FOR PROSECUTING THIS ACTION ON BEHALF OF THE SETTLEMENT CLASS.

BEGINNING WITH ATTORNEY'S FEES, YOUR HONOR, PLAINTIFF'S COUNSEL IS SEEKING $750,000 OUT OF THE $3 MILLION SETTLEMENT WHICH REPRESENTS A 25 PERCENT SHARE OF THE SETTLEMENT FUND.  THIS -- AS YOUR HONOR NOTED, THERE HAS BEEN APPROXIMATELY 50,000 CLAIMS FORMS EITHER MAILED OR E-MAILED TO POTENTIAL CLASS MEMBERS, AND, YOU

KNOW, DESPITE THE EXTENSIVE NOTICE THAT WAS GIVEN IN THIS CASE, WE HAVE ONLY ONE OBJECTION TO THE PROPOSED REQUEST FOR ATTORNEY'S FEES.  THERE WAS NO OBJECTION TO THE REQUEST FOR REIMBURSEMENT OF LITIGATION EXPENSES IN THIS CASE, AND THERE WAS ALSO NO OBJECTION TO OUR REQUEST FOR AN INCENTIVE AWARD TO THE LEAD PLAINTIFF, ALL OF WHICH WERE FULLY DISCLOSED IN THE NOTICE THAT WAS APPROVED BY THE COURT.

SO, AS MR. JANES WAS SAYING, THE REACTION IN FAVOR OF BOTH THE SETTLEMENT BUT ALSO WITH RESPECT TO OUR MOTION FOR FEES AND EXPENSES HAS, YOU KNOW, RECEIVED MINIMAL AMOUNTS OF OBJECTIONS AND SHOULD BE CONSIDERED SUPPORTED.

WITH RESPECT TO THE FEES, COUNSEL --

THE COURT:  CAN I JUST STOP YOU.

MR. POTREPKA:  YES.

THE COURT:  YOU SAID YOU HAD ONE OBJECTION TO THE ATTORNEY'S FEES.  IS THAT THE SAME PERSON?

MR. POTREPKA:  MR. MINOR.  IT IS THE SAME INDIVIDUAL.  YES.  HIS NOTICE OF OBJECTION STATED THAT HE OBJECTED TO THE FEE REQUEST ONLY.  HOWEVER --

THE COURT:  IS THAT WHAT -- COUNSEL USED THE TERM PLAN OF ALLOCATION.

MR. POTREPKA:  HE DID OBJECT TO THE $10 DE MINIMUS PROVISION IN THE PLAN OF ALLOCATION BECAUSE HIS -- UNDER HIS CALCULATION WHICH, AGAIN, WE ARE NOT CERTAIN IF IT IS CORRECT, BUT, UNDER HIS CALCULATION, HE CLAIMED TO BE ENTITLED TO RECOVERY IN LESS THAN A $10 AMOUNT.  FOR THE

REASON THAT MR. JANES DESCRIBED, NAMELY THAT CASE LAW SUFFICIENTLY AND ROUTINELY ENDORSES PROVISIONS OF THAT KIND SO AS TO PROTECT CLASS MEMBERS FROM HAVING WASTED FUNDS GO TO ADMINISTERING DE MINIMUS AMOUNTS OF CLAIMS, THOSE PROVISIONS ARE ROUTINELY GRANTED.  THAT IS OUR EXPERIENCE, AND THAT WAS ALSO THE CLAIMS ADMINISTRATOR'S EXPERIENCE WHO SUBMITTED A DECLARATION TO THAT EFFECT.

AND SEPARATELY WITHIN THAT --

THE COURT:  SO IS MR. MINOR'S OBJECTION THAT HE IS NOT HAPPY THAT HE WON'T BE COLLECTING WHATEVER AMOUNT THAT HE IS DUE THAT IS BELOW THE $10 THRESHOLD?

MR. POTREPKA:  THAT'S RIGHT, YOUR HONOR.  HE CALCULATED $7 AND CHANGE AS AN AMOUNT THAT SUPPOSEDLY REPRESENTED HIS RECOGNIZED LOSS.

AGAIN, AS MR. JANES SAID, CLASS MEMBERS ARE ONLY ENTITLED TO RECEIVE THEIR PRO RATA AMOUNT OF THE SETTLEMENT RECOVERY SO IT WOULD BE A REDUCTION EVEN OF THAT.  SO WE ARE TALKING ABOUT A REALLY TINY, TINY CLAIM HERE.

THE COURT:  SO IF HE IS GETTING 42-CENTS A SHARE, HE DOESN'T OWN -- AT BEST CASE SCENARIO, HE DIDN'T OWN THAT MANY SHARES.

MR. POTREPKA:  CORRECT, YOUR HONOR.  HE OWNED, I BELIEVE IT WAS 12 SHARES.

THE COURT:  WHICH HE DID NOT PROVE; RIGHT?  HE HAS NOT SUBMITTED PROOF OF OWNERSHIP?

MR. POTREPKA:  HE DID NOT SUBMIT PROOF OF THAT, AND HE DID NOT SUBMIT PROOF OF WHEN HE DISPOSED OR IF HE

DISPOSED OF THOSE SHARES OR OTHERWISE.  LIKE I SAID, IF
THEY WERE TO COVER SHORT SALES, THEY WOULD ALSO NOT BE
ENTITLED TO RECOVER AT ALL.

THE COURT:  SO WHAT IS HIS OBJECTION TO THE FEES?

MR. POTREPKA:  SO, YOUR HONOR, THE OBJECTION TO
THE FEES WAS TOTALLY PREMATURE.  HE FILED HIS OBJECTION
BEFORE MOTIONS FOR FINAL APPROVAL AND FOR FEES AND
EXPENSES WERE DUE.  THE ENTIRETY OF HIS ARGUMENT IS THAT
PLAINTIFFS DID NOT SUBMIT -- WELL, LEAD COUNSEL DID NOT
SUBMIT THE TIME AND EXPENSE THAT THEY WORKED ON THIS
CASE, BUT, OF COURSE, OUR MOTION FOR FEES WAS NOT DUE
YET.  SO HAVING SEEN THAT MOTION, I TAKE IT HE HAS NOT
FURTHER RESPONDED TO THE COURT AND TAKEN ISSUE WITH THE
FEES AND EXPENSES THAT WE DID SUBMIT.

IN THIS CASE, LEAD COUNSEL HAS, YOU KNOW,
EXPENDED OVER 1200 HOURS, AND I SHOULD NOTE HE DID NOT
OBJECT TO ANY OTHER PART EXCEPT WITH RESPECT TO THE FEES
AS IT RELATES TO OUR MOTION FOR FEES AND EXPENSES.

THE COURT:  RIGHT.  HE HAS NO OBJECTION TO THE
COSTS THAT YOU ARE SEEKING OR TO THE REMUNERATION FOR
YOUR LEAD PLAINTIFF.

MR. POTREPKA:  THAT'S RIGHT, YOUR HONOR.  AND SO,
AS I WAS SAYING, IN THIS CASE LEAD COUNSEL HAS EXPENDED
OVER 1200 HOURS OF TOTAL LODESTAR.

THE COURT:  AND HOW AM I TO KNOW HOW REASONABLE
THOSE HOURS ARE?

MR. POTREPKA:  SO, YOUR HONOR, WE SUBMITTED
DETAILED TIME RECORDS, AND THAT IS BEFORE YOUR HONOR IN

THE PAPERS.  WE SUBMITTED YOU KNOW LINE ITEMS OF EVERY SINGLE TASK THAT WE HAVE DONE, AND IT RELATES TO THE WORK THAT MR. JANES WAS DESCRIBING BEFORE THAT LEAD COUNSEL EXPENDED IN THIS CASE.

THESE ARE VERY, VERY LABOR INTENSIVE CASES. FROM THE OUTSET, WE HAD A CLASS PERIOD OF THREE YEARS, AND ANY SECURITIES FRAUD CASE ALLEGING FRAUD ON THE MARKET, WE ARE -- YOU KNOW, IT IS INCUMBENT ON US TO PREPARE A COMPLAINT THAT LOOKS AT EVERY SINGLE PIECE OF PUBLISHED INFORMATION ABOUT THE COMPANY, THE CORPORATE ENTITY, AS WELL AS THE INDIVIDUAL DEFENDANTS IN THIS CASE.

IN THIS CASE THAT MEANT REVIEWING PRESS RELEASES, EARNINGS, CALL TRANSCRIPTS, EVERY DOCUMENT THAT WAS FILED WITH THE SECURITIES AND EXCHANGE COMMISSION, EVERY DOCUMENT THAT WAS FILED WITH THE PHILLIPINES SECURITIES AND EXCHANGE COMMISSION, EVERY PIECE OF FINANCIAL NEWS REPORTING, ANALYST REPORTS AND ANY OTHER INFORMATION THAT WE COULD OBTAIN WITH RESPECT TO PUBLIC RECORDS, AS WELL AS MR. JANES MENTIONED, RETAINING AN INVESTIGATOR TO INTERVIEW, LOCATE AND INTERVIEW, YOU KNOW, FORMER EMPLOYEES OF PLDT, GETTING ALL THAT INFORMATION, REVIEWING IT, SYNTHESIZING IT INTO A COMPLAINT THAT SPANNED OVER 200 PAGES.

AFTER WE FILED THAT ON BEHALF OF OUR COMPLAINT AND THE CLASS, WE, YOU KNOW, RECEIVED DEFENDANT'S MOTION TO DISMISS WHICH WAS EXTENSIVE AND CONTAINED MANY EXHIBITS WHICH ARE ON THE COURT'S DOCKET.  YOU KNOW, WE

HAD TO PREPARE AS THOUGH OUR MOTION TO -- AS WE WERE GOING TO OPPOSE THE MOTION TO DISMISS, AND WE HAD STARTED THAT PROCESS WHICH WAS EXTENSIVE BRIEFING SIMULTANEOUSLY.

THE PARTIES DECIDED TO SEEK, YOU KNOW, A MEDIATION TO POTENTIALLY RESOLVE THIS CASE IF IT WAS POSSIBLE.  THAT PROCESS INVOLVED PREPARING LENGTHY MEDIATION STATEMENTS, EXCHANGING THOSE, CONSIDERING THE DOCUMENTS AND EXHIBITS AND VIEWS OF THE DEFENDANTS THAT WERE CONTAINED IN THEIR MEDIATION FILINGS, AND ALL THAT WORK IS REFLECTED IN OUR TIME RECORDS AND WAS CRUCIAL TO THE SUCCESS OF, YOU KNOW, THE MEDIATION AS WELL AS OUR ABILITY TO OBTAIN A RECOVERY THAT, AS JUDGE CARNEY RECOGNIZED, WAS AN EXCELLENT RESULT FOR THE CLASS.

THE COURT:  AND YOUR TIMING RECORDS, THE BILLING RECORDS -- RIGHT -- THOSE ARE DETAILED IN THAT THEY PROVIDE INDIVIDUAL TIME KEEPERS' NAMES, THE AMOUNT OF TIMES THEY SPENT ON INDIVIDUAL TASKS, YOU KNOW, OVER THE PERIOD OF TIME THAT YOU WERE PERFORMING LEGAL SERVICES FOR YOUR CLIENT?

MR. POTREPKA:  THEY ABSOLUTELY DO, YOUR HONOR. I'M SORRY.  THAT IS WHAT I MEANT BY DETAILED TIME RECORDS INSOFAR AS THEY MENTIONED EVERY TIME KEEPER.  THEY MENTIONED EACH INDIVIDUAL TIME KEEPER'S BILLING RATE WHICH ARE MARKET RATES AND WHICH ARE RATES THAT HAVE BEEN ACCEPTED BY COURTS IN THE NINTH CIRCUIT AND, YOU KNOW, ARE COMMENSURATE WITH RATES THAT ARE CHARGED BY OTHER SECURITIES PRACTITIONERS AND FIRMS IN THIS AREA AND WITH RESPECT TO THIS GEOGRAPHICAL AREA.

AND SO IF THE COURT WERE TO LOOK AT PLAINTIFF, THE LEAD COUNSEL'S LODESTAR, IT WOULD APPROXIMATE $800,000 WHICH IS ACTUALLY AN EXCESS OF THE 25 PERCENT FEE THAT IS THE BENCHMARK IN THE NINTH CIRCUIT.

THE COURT:  YOU ARE ASKING FOR LESS THAN.

MR. POTREPKA:  WE ARE ASKING FOR LESS.  IF THE COURT WERE TO USE A LODESTAR METHOD, IT WOULD ACTUALLY RESULT IN A WORSE SITUATION FOR THE CLASS AS FEES WOULD BE HIGHER THAN THE $750,000 THAT WE ARE REQUESTING IN THIS ACTION.

SO, IN DECIDING WHETHER TO APPROVE A FEE REQUEST, COURTS IN THIS CIRCUIT TYPICALLY LOOK AT IT VIZCAINO FACTORS.  THE FIRST FACTOR IS THE RESULT ACHIEVED, AND MR. JANES DISCUSSED THIS THAT THE 15.4 PERCENT RECOVERY IN A CLASS ACTION LIKE THIS ONE WHICH CONTAINS MANY, MANY SUBSTANTIVE ELEMENTS WHICH WERE, YOU KNOW, THREE OF WHICH WERE CHALLENGE FALSITY, SCIENTER AND LOSS CAUSATION IN A MOTION TO DISMISS WHICH WAS PENDING AT THE TIME THE SETTLEMENT WAS REACHED AND WOULD BE CHALLENGED AGAIN AND AGAIN AND AGAIN AT CLASS CERTIFICATION AND SUMMARY JUDGMENT, AT TRIAL, AND, YOU KNOW, IF WE WERE SUCCESSFUL ON ALL THAT, ON APPEAL, I AM SURE.  A 15.4 PERCENT RECOVERY IN THESE TYPES OF CASES IS AN EXCELLENT RESULT.  THERE IS AMPLE CASE LAW THAT ENDORSES OR APPROVED SETTLEMENTS WITH FAR FEWER, FAR LOWER AMOUNTS OF RECOVERY.

THE RISKS OF LITIGATION WERE COVERED, AND THAT IS VIZCAINO FACTOR 2.  WITH RESPECT TO JUST THE ELEMENTS

THAT WERE ATTACKED WITHIN THE MOTION TO DISMISS, YOU KNOW, WITH RESPECT TO FALSITY, WE COVERED THIS AT PAGE 8 TO 9 OF OUR FEE BRIEF WHICH MENTIONS A LOT OF THE SAME REASONS THAT SUPPORT THE APPROVAL OF THE SETTLEMENT, NAMELY THAT DEFENDANTS STATED THAT THEIR CAPITAL EXPENDITURE FIGURES WERE ACCURATE AND THEY HAVE NEVER RESTATED THOSE AMOUNTS.

DEFENDANTS CLAIMED THAT MANY OF THE ALLEGED MISSTATEMENTS IN THIS CASE WERE OPINIONS OR WERE FORWARD LOOKING AND WERE OTHERWISE PROTECTED BY THE SAFE HARBOR POSITION OF THE PSLRA. THERE ARE EXACTING PLEADING REQUIREMENTS AS A RESULT OF THE PSLRA, THE PRIVATE SECURITIES LITIGATION REFOM ACT OF 1995, THAT MAKE SUCCESSFULLY ALLEGING A SECURITIES FRAUD CLAIM VERY DIFFICULT.

WITH RESPECT TO SCIENTER, THERE WAS NO PECUNIARY MOTIVE ALLEGED WHICH, YOU KNOW, DEFENDANTS HIGHLIGHTED IN THEIR MOTION TO DISMISS AND WHICH IS SOMETIMES RELEVANT TO THE COURT'S ANALYSIS ON THESE MOTIONS TO DISMISS. THERE IS NO ALLEGATIONS, FOR EXAMPLE, THAT THERE WERE ANY INSIDER SALES BY ANY OF THE NAMED INDIVIDUAL DEFENDANTS.

WITH RESPECT TO LOSS CAUSATION, DEFENDANTS ARGUED THAT PLAINTIFFS COULD NOT ATTRIBUTE THE DROP IN ADS PRICES FOLLOWING THE ALLEGED CORRECTIVE DISCLOSURES AT THE END OF THE CLASS PERIOD TO THE ALLEGED -- THE ALLEGED MISSTATEMENTS RATHER THAN A DROP AS A RESULT OF OTHER CONFOUNDING FACTORS OR MARKET FACTORS OR ISSUES

THAT WERE NOT RELATED TO PLAINTIFF'S ALLEGED CLAIMS.

SO ALL OF THESE ISSUES PLUS THE PROTRACTED FORM DISCOVERY THAT MR. JANES TALKED ABOUT, THE ABILITY TO WITHSTAND CLASS CERTIFICATION WHICH IS MORE AND MORE DIFFICULT EACH YEAR AS A RESULT OF, YOU KNOW, CASES SUCH AS THE GOLDMAN SACHS DECISION BEFORE THE SUPREME COURT WHICH, YOU KNOW, ALLOWS DEFENDANTS GREATER LATITUDE TO CHALLENGE PRICE IMPACT AT CERTIFICATION, SUMMARY JUDGMENT, THE OBVIOUS RISK OF TRIALS AND APPEALS PRESENTED CONSIDERABLE RISKS THAT A -- AN AMOUNT LESS THAN THE SETTLEMENT AMOUNT WOULD HAVE RESULTED OR NO RECOVERY AT ALL ON BEHALF OF THE CLASS.

THE THIRD VIZCAINO FACTOR IS THE QUALITY OF REPRESENTATION.  THIS, AGAIN, GOES TO THE WORK THAT THE LEAD COUNSEL, YOU KNOW, INCURRED ON BEHALF OF THE SETTLEMENT CLASS.  HERE, JUDGE CARNEY RECOGNIZED THAT -- THIS IS ON PAGE 15 OF THE PRELIMINARY APPROVAL ORDER -- THAT CLASS COUNSEL'S WORK IN THIS CASE WAS SUFFICIENT FOR THE PARTIES TO REALISTICALLY VALUE THE CASE.  AND THAT, I THINK, WAS EXACTLY RIGHT.

LEAD COUNSEL'S INVESTIGATIVE EFFORTS AS I MENTIONED INCLUDE EXTENSIVE REVIEW AND ANALYSIS OF ALL TYPES OF PUBLIC DOCUMENTS, PUBLIC FILINGS, PUBLIC NEWS ARTICLES AND FINANCIAL ANALYSES, COMMENTARY AND OTHER COURT FILINGS, AND ALL OF THAT WAS JUST IN RELATION TO PREPARING THE CLAIM AS WELL AS ALL OF THE WORK THAT WENT INTO THE SETTLEMENT DISCUSSIONS, THE PAPERS IN CONNECTION WITH THE SETTLEMENT AND PREPARING TO, YOU KNOW, FILE OUR

PRELIMINARY APPROVAL MOTION.  WE HAVE NOT INCLUDED ANY LODESTAR RELATED TO COUNSEL'S WORK AFTER PRELIMINARY APPROVAL, BUT ALL OF THAT WAS FOR THE BENEFIT OF THE CLASS.

IN ADDITION, IT IS APPROPRIATE TO NOTE THAT THERE WAS NO PARALLEL SECURITIES AND EXCHANGE COMMISSION ACTION OR DOJ ACTION BROUGHT AGAINST THE DEFENDANTS, AND SO THIS ACTION WAS THE RESULT OF THE CREATIVE EFFORTS OF LEAD COUNSEL, OUR OWN INVESTIGATION.  WE DID NOT PIGGY BACK OFF OF SOMEBODY ELSE'S COMPLAINT.  THIS RESULT IS SOLELY THE RESULT OF LEAD COUNSEL AND LEAD PLAINTIFF.

AND IT IS ALSO APPROPRIATE TO CONSIDER THE CALIBER OF THE DEFENSE.  HERE, THE DEFENDANTS WERE REPRESENTED BY ABLE COUNSEL WHO FILED A DETAILED AND CHALLENGING MOTION TO DISMISS, AND LEAD COUNSEL WAS ABLE TO CONVINCE THE DEFENDANTS AND THEIR ATTORNEYS AND THEIR INSURANCE CARRIER'S ATTORNEYS TO SETTLE THE CASE ON TERMS THAT WE SUBMIT ARE FAVORABLE TO THE CLASS.

THE NEXT VIZCAINO FACTOR IS THE NATURE OF THE CASE.  HERE, THIS CASE WAS CONTINGENT, WAS TAKEN WHOLLY ON A CONTINGENCY BASIS.  WE HAVE NOT BEEN PAID ANYTHING, AND, YOU KNOW, WE HAVE NOT EXPECTED TO RECEIVE PAYMENT UNTIL THERE WAS A SETTLEMENT ON BEHALF OF THE CLASS.

THE FIFTH VIZCAINO FACTOR IS THE BENCH MARK IS THE REQUESTED FEE IN RELATION TO SIMILAR CASES.  WE SUBMIT THAT THERE ARE A NUMBER OF CASES ON PAGE 13 AND 14 OF OUR FEE BRIEF THAT ARE ANALOGOUS CASES.  THE COURT HAS OVERSEEN PRELIMINARY APPROVAL OF A SECURITIES CLASS

ACTION THAT RESULTED IN A TENTATIVE $3 MILLION SETTLEMENT IN THE HANMI FINANCIAL CASE, AND, IN THAT CASE, THE COURT PRELIMINARILY APPROVED A FEE AWARD OF 30 PERCENT.  SO THE 25 PERCENT REQUESTED IN THIS CASE IS ACTUALLY MORE FAVORABLE EVEN THAN SOME OTHER CASES OUT THERE.

THE REACTION OF THE CLASS IS THE NEXT FACTOR, AND, AGAIN, THERE HAS ONLY BEEN ONE OBJECTION TO THE FEE REQUEST.  WE SUBMIT IT IS BOTH PROCEDURALLY IMPROPER AND DEFICIENT IN THE WAYS THAT WE DESCRIBED BEFORE WITH RESPECT TO THE LACK OF SUPPORTING DOCUMENTATION AS WELL AS SUBSTANTIVELY MERITLESS.

IT WAS FILED BEFORE WE HAD AN OPPORTUNITY TO SUBMIT OUR LODESTAR AND, YOU KNOW, PROVIDE THE EXACT INFORMATION THAT MR. MINOR FOUND WANTING, AND IT IS -- OUR FEE REQUEST IS WHOLLY FAIR, ADEQUATE AND REASONABLE IN LIGHT OF ALL THE VIZCAINO FACTORS THAT I HAVE DISCUSSED AS WELL AS THE AMPLE PRECEDENT SUPPORTED IN OUR BRIEF.

WITH RESPECT TO EXPENSES, LEAD COUNSEL IS SEEKING REIMBURSEMENT OF LITIGATION EXPENSES IN THE AMOUNT OF $67,495.63.  THERE HAVE BEEN NO OBJECTIONS TO OUR REQUEST FOR LITIGATION EXPENSES.  THESE EXPENSES, AS I MENTIONED BEFORE, THIS CASE WAS TAKEN ON A WHOLLY CONTINGENT BASIS SO ABSENT A RECOVERY OR SETTLEMENT ON BEHALF OF, YOU KNOW, A SUCCESSFUL SETTLEMENT THERE WAS NO GUARANTEE THAT WE WOULD EVERY RECOVER ANY EXPENSES.  SO LEAD COUNSEL WAS INCENTIVIZED TO MINIMIZE EXPENSES EXCEPT FOR THOSE THAT WERE NECESSARY FOR THE PROSECUTION OF THE

LITIGATION.

IN THIS CASE, THE EXPENSES ARE ALL THE TYPES THAT PARTIES WHO WERE PAYING FOR EXPENSES ON A MONTHLY BASIS OR OTHERWISE WOULD ORDINARILY -- WOULD ORDINARILY PAY FOR. FOR EXAMPLE, THE LARGEST EXPENSE HERE WAS $16,000 FOR THE MEDIATOR. THE MEDIATOR WAS ABSOLUTELY NECESSARY TO BRING THE PARTIES TOGETHER AND ACHIEVE THE SETTLEMENT THAT WE HAVE PRESENTED THE COURT TODAY.

WE ALSO INCURRED $15,000 IN CONNECTION WITH RETAINING PRIVATE INVESTIGATORS WHO WERE ABLE TO LOCATE SOMETIMES IN PERSON. THESE WERE PRETTY EXTENSIVE EFFORTS TO LOCATE INDIVIDUALS THAT WERE FORMER EMPLOYEES OF PLDT AND TO PROVIDE COUNSEL INFORMATION AS TO THE GOINGS ON DURING THE THREE-YEAR CLASS PERIOD.

LEAD COUNSEL ALSO INCURRED EXPENSES WITH RESPECT TO DAMAGES AND OTHER EXPERTS WHO SUPPORTED LEAD COUNSEL IN PREPARING THE PLAN OF ALLOCATION FOR THE CLASS. LEAD COUNSEL ALSO INCURRED EXPENSES FOR PROCESS SERVERS, TRANSPORTATION AND MEALS FOR COUNSEL, FILING FEES AND OTHER TYPES OF FEES RELATED TO, YOU KNOW, PRO HACS AND CERTIFICATES OF SERVICE AND COURT TRANSCRIPTS.

LAST, WE REQUEST THAT THE COURT APPROVE THE REQUEST OF $5,000 AS AN INCENTIVE AWARD FOR AND REIMBURSEMENT OF COSTS AND EXPENSES FOR LEAD PLAINTIFF. THE REQUEST IN THIS RESPECT WAS NOT OBJECTED TO BY ANYONE. A $5,000 AMOUNT IS CONSIDERED PRESUMPTIVELY REASONABLE THAT WAS FOUND IN THE PRELIMINARY APPROVAL ORDER AT PAGE 22 AS WELL AS NUMEROUS AUTHORITIES

INCLUDING BECERRA-SOUTH VERSUS HOWROYD-WRIGHT EMPLOYEE
AGENCY INC., AND THOSE ARE -- THOSE ARE, YOU KNOW, TO
REIMBURSE -- THESE ARE THE TYPES OF REQUEST TO REIMBURSE
THE LEAD PLAINTIFF FOR THE ADVOCACY AND ACTIONS THAT HE
TOOK ON BEHALF OF THE SETTLEMENT CLASS.

AS MR. JANES EXPLAINED, HE WAS INVOLVED IN
REVIEWING ALL FILINGS ON HIS BEHALF AS WELL AS COURT
ORDERS, PARTICIPATING IN THE MEDIATION AND WORKING WITH
LEAD COUNSEL TO UNDERSTAND THE SETTLEMENT AND ULTIMATELY
APPROVE IT.

IF THE COURT HAS ANY OTHER QUESTIONS?

THE COURT:  NO.  THANK YOU.

THE COURT:  COUNSEL FOR DEFENDANT, WOULD YOU LIKE
TO BE HEARD.

MR. VILLAVERDE:  YOUR HONOR DEFENDANTS HAVE
NOTHING FURTHER TO ADD OTHER THAN DEFENDANT WOULD
RESPECTFULLY REQUEST THAT THE COURT GRANT PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF THE SETTLEMENT.

THE COURT:  I DID HAVE A QUESTION.  HOW IS THE
SETTLEMENT BEING FUNDED?  I THINK I READ THAT PLDT HAD
VERY LIMITED ASSETS AS OF THE END OF 2023.  DID I MISREAD
THAT?

MR. VILLAVERDE:  YOUR HONOR, THE SETTLEMENT IS
BEING FUNDED IN PART BY THE COMPANY AS WELL AS IS TYPICAL
IN THIS SPACE THERE IS ALSO INSURANCE THAT IS BEING DRAWN
UPON.

THE COURT:  OKAY.  ALL RIGHT.

ANYTHING ELSE?

MR. POTREPKA:  NOTHING FURTHER, YOUR HONOR.

MR. VILLAVERDE:  NOTHING FURTHER, YOUR HONOR.

THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH, COUNSEL.

I WILL TAKE YOUR MOTION UNDER SUBMISSION.  WE WILL TRY TO GET AN ORDER OUT AS PROMPTLY AS POSSIBLE.

MR. POTREPKA:  THANK YOU, YOUR HONOR

MR. VILLAVERDE:  THANK YOU.

(PROCEEDINGS CONCLUDED.)

CERTIFICATE


I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATE:  JULY 9, 2025


 /S/ KATIE THIBODEAUX, CSR NO. 9858, RPR, CRR